United States District Court
Southern District of Texas
FILED
OCT 04 2021
Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
**ENTERED**
October 04, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | ACTION NO. 7:21-PO-0001 |
| | § | |
| EDUARDO LEAL | § | |

## MEMORANDUM & ORDER

The undersigned Magistrate Judge recently presided over a bench trial on a misdemeanor citation charging that Defendant EDUARDO LEAL engaged in prohibited activities in a National Wildlife Refuge System in violation of 16 U.S.C. § 668dd(c).[1] At the close of trial, the Magistrate Judge took the matter of Defendant's guilt under advisement. Now, having considered the trial evidence, the applicable law, and the arguments of counsel, the Magistrate Judge will find and adjudge Defendant guilty of the cited offense.

### I. BACKGROUND

**A. The Refuge**

Defendant was issued the citation at *La Sal del Rey*, or "the King's Salt," (the "Refuge") located in Hidalgo County, Texas. The Refuge's main geologic feature is one of only three naturally occurring saline lakes in the South Texas region.[2] (Figure 1). The 530-acre lake, which sits atop an estimated four million tons of salt, served as a historical source of the mineral for indigenous peoples, Spanish explorers, and Mexican traders. In 1992, the lake together with a

---

[1] The citation at issue constitutes a Class B misdemeanor. *See* 16 U.S.C. § 668dd(f)(2); *see also* 18 U.S.C. § 3559(a)(7). In the case of a Class B misdemeanor, which carries a sentence of up to six months, a defendant is entitled to only a bench trial. *See United States v. Merrill*, 2008 WL 681475, at *1 (D. Colo. Mar. 6, 2008) (citing Fed. R. Crim. P. 58(b)(2)(F)).

[2] U.S. FISH & WILDLIFE SERVICE, LOWER RIO GRANDE VALLEY NATIONAL WILDLIFE REFUGE, LA SAL DEL REY, www.fws.gov/refuge/Lower_Rio_Grande_Valley/visit/la_sal_del_rey.html (last visited Oct. 4, 2021).

surrounding 5,400-acre tract of Tamaulipan thorn forest and grasslands were acquired by the federal government for inclusion in the Lower Rio Grande Valley National Wildlife Refuge. The Refuge is known today for its diverse wildlife, including many wintering bird species, like the threatened long-billed curlew, North America's largest shorebird. (Figure 2 & Figure 3).



Figure 1. Photo Credit: Dora Martinez / La Sal Del Rey / USFWS Lower Rio Grande Valley.



Figure 2 & Figure 3. Photo Credit: Eric Cole / Long-Billed Curlew / USFWS Mountain-Prairie.

**B. The Citation**

On October 18, 2020, Romeo Garcia, a Senior Federal Wildlife Officer with the U.S. Fish and Wildlife Service, encountered Defendant at the Refuge and, after a brief investigation, issued two misdemeanor citations. The first citation, or the one considered here, charged a violation of § 668dd(c) and alleged that Defendant removed or destroyed federal property within the Refuge,

specifically, by digging salt from the lake and taking wood and wildlife bones. (Dkt. No. 1 at 1). Defendant received a second citation for taking or possessing migratory bird parts, or feathers, in violation of 16 U.S.C. § 703(a). (*United States v. Leal*, Action No. 7:21-PO-0002, Dkt. No. 1).

At trial, the Government orally dismissed the second citation while amending the first to include allegations as to Defendant's removal of salt and possession of bird feathers. (Bench Trial at 3:40:51-3:41:41, *United States v. Leal*, Action No. 7:21-PO-0001 (S.D. Tex. Sept. 10, 2021)).

**C. Bench Trial**

The bench trial was held on September 10, 2021. Defendant was represented by court-appointed counsel, Mr. Christopher George Gonzalez with the Office of the Federal Public Defender. (Dkt. No. 2). The Government called on Officer Garcia to testify as its only witness. (Bench Trial at 3:50:24-4:21:32). Defendant did not testify. The parties also offered their respective legal arguments concerning guilt. (*Id.* at 3:43:28-3:50:17, 4:21:44-4:33:24). The main issue raised by the defense was whether the Government has the burden to establish that the otherwise prohibited conduct was not exempted by a separate statute or regulation as contemplated by § 668dd(c). Officer Garcia's testimony and the arguments of counsel are discussed in turn.

## II. TRIAL TESTIMONY

Officer Garcia testified that he was patrolling a tract of land near the Refuge on the morning of October 18, 2020 when he noticed a white vehicle parked on a service road that was not accessible to the public. (Bench Trial at 3:55:58-3:56:14). Officer Garcia returned to the area later that day and saw that the vehicle had not moved. (*Id.* at 3:58:15-3:58:33). He decided to enter the Refuge and patrol the area to determine whether the owner of the vehicle was safe or in need of assistance. (*Id.* at 3:58:34-58:58).

Officer Garcia observed Defendant walking toward him, ostensibly attempting to exit the Refuge. (*Id.* at 3:59:00-3:59:16). Defendant carried wood and wildlife bones in his hands. (*Id.* at 4:00:07-4:00:22). He also wore a backpack which appeared to Officer Garcia to be full. (*Id.*).

Officer Garcia asked Defendant to place the items he was holding by the roadside. (*Id.* at 4:01:25-4:02:38). When Defendant did so, Officer Garcia noticed a feather sticking out of the backpack. (*Id.*). Officer Garcia asked whether Defendant was carrying items from the Refuge in the backpack, but Defendant initially said it held only personal items. (*Id.* at 4:02:39-4:02:48). When Officer Garcia repeated the question, Defendant opened the backpack to reveal more wood and animal bones, as well as feathers, salt, a digging tool, crystals, and other personal items.[3] (*Id.* at 4:02:49-4:04:05). Defendant told Officer Garcia that he was an artist and intended to use the items he had gathered to make decorations. (*Id.* at 4:06:56-4:07:48).

When asked by the Government about the potential impact of Defendant's taking and destruction of property from the Refuge, Officer Garcia testified that such actions could, in the aggregate, negatively impact the Refuge's status as a habitat for wildlife. (*Id.* at 4:16:13-4:19:45).

On cross-examination, Officer Garcia stated that Defendant did not remove the items from the area or boundary of the Refuge, and that Defendant could be said to have attempted to remove the items from the Refuge.[4] (*Id.* at 4:20:10-4:20:43). Also, Officer Garcia admitted that the removal of the amount of salt in Defendant's backpack would not meaningfully affect the salinity of the lake. (*Id.* at 4:20:45-4:21:09). Officer Garcia responded in the negative to questions regarding whether Defendant attempted to take large quantities of wood or whether there was any evidence that he had killed any animals while on the Refuge. (*Id.* at 4:21:12-4:21:29).

---

[3] The Government does not contend that Defendant took the crystals from the Refuge.

[4] Whether § 668dd(c) may be violated by way of an attempt is a legal matter for the Magistrate Judge to determine. The matter of attempt is discussed further below.

### III. ARGUMENTS OF COUNSEL

**A. The Defense**

Mr. Gonzalez argued that insofar as § 668dd(c) contains an exception for otherwise prohibited activities if they are permitted by applicable law, the Government bears the burden of establishing that no such overriding law exists. (Bench Trial at 3:43:28-3:45:06).

Section 668dd(c) prohibits certain activities "unless such activities are permitted either under subsection (d) of [§ 668dd] or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof . . . ." 16 U.S.C. § 668dd(c). Subsection (d) authorizes the Secretary of the U.S. Department of the Interior (the "Secretary"), among other things, to—

> permit the use of any area within the System for any purpose, including but not limited to hunting, fishing, public recreation and accommodations, and access whenever he determines that such uses are compatible with the major purposes for which such areas were established.

*Id.* § 668dd(d). In turn, subsection (e) provides, in relevant part, that the Secretary is obligated to "identify and describe . . . opportunities for compatible wildlife-dependent recreational uses." *Id.* § 668dd(e)(2)(F).

As support for the possibility that some law may exist to permit Defendant's conduct—but that the Government simply failed to find it—Mr. Gonzalez pointed to the above provisions together with three regulations: Section 5.5 of the Final Lower Rio Grande Valley and Santa Ana National Wildlife Refuges Comprehensive Conservation Plan (the "Plan"),[5] which authorizes the Secretary to "offer compatible wildlife-dependent public access and recreational opportunities[,]" like "wildlife observation, photography, fishing, and hunting recreational opportunities[,]" as long as they "do not 'materially detract from or interfere with the purposes for which a refuge is

---

[5] The Plan can be found at www.fws.gov/uploadedfiles/lrgv%20ccp_2008.pdf (last visited Oct. 4, 2021).

established'"; an executive order referenced in the Plan, or Executive Order 12,996, 61 Fed. Reg. 13,647 (Mar. 25, 1996), which directs the Secretary, in part, to "recognize compatible wildlife-dependent recreational activities involving hunting, fishing, wildlife observation and photography, and environmental education and interpretation as priority general public uses . . . within [the System] when they are compatible and consistent with sound principles of fish and wildlife management, and are otherwise in the public interest"; and 43 C.F.R. § 3622.4, which permits an authorized officer to control the removal of petrified wood from public lands based on specified criteria. (Bench Trial at 3:45:07-3:49:17).

Mr. Gonzalez closed by referring to the "material detraction" language found in Section 5.5 of the Plan. According to Mr. Gonzalez, the appropriate legal standard in this case was whether Defendant's actions materially detracted from the environment of the Refuge. (*Id.* at 4:31:33-4:31:47). Mr. Gonzalez argued that the amount of salt in Defendant's backpack was de minimis and that the removal of the other items from the Refuge would not cause a material detraction. (*Id.* at 4:31:28-4:32:04).

**B. The Government**

The Government acknowledged the exception at subsection (c) but argued that it was inapplicable in this case. (Bench Trial at 4:24:22-4:24:47). In so doing, the Government pointed to the plain language of § 668dd(c), which specifically prohibits the charged offense conduct. (*Id.* at 4:22:00-4:22:24). By way of contrast, the Government noted that subsection (d), as well as the Plan and Executive Order 12,996, allowed accommodation only for activities like hunting, fishing, and wildlife observation. (*Id.* at 4:24:50-4:27:03). As rebuttal to Mr. Gonzalez's closing, the Government argued that the Plan's materiality requirement did not apply insofar as materiality was only a consideration regarding the above activities. (*Id.* at 4:32:07-4:33:25).

## IV. LEGAL STANDARDS

### A. Elements of § 668dd(c)—Generally

Section 668dd(c) provides, in relevant part, that "[n]o person shall . . . remove, destroy, or possess any real or personal property of the United States, including natural growth, in any area of the System . . . or . . . possess any . . . bird, mammal, or other wild vertebrate . . . animals or part . . . thereof within any such area . . . ." 16 U.S.C. § 668dd(c).

The Government has charged two main alternatives by which the statute was violated. Under the first, the offense involves the elements that (i) a person (ii) removed, destroyed, or possessed (iii) real or personal property of the United States, including natural growth, (iv) in any area of the System. For the second, the elements are that (i) a person (ii) possessed (iii) any bird, mammal, or other wild vertebrate or part thereof (iv) within any area of the System. There is one notable difference between the "property" and "wildlife" offense elements: it is immaterial whether the United States has a property interest in the wildlife, such that the proscribed conduct with respect to wildlife need merely have occurred within the specified area.

The matter of whether these offenses involve an element of mens rea, or are premised on strict liability, is addressed further below.

### B. Elements of § 668dd(c)—Definitions

The term "person" is defined by the statutory scheme to include an individual. *See* 16 U.S.C. § 668ee(8).

The terms "remove," "destroy," and "possess" are not statutorily defined but may otherwise be ascribed their natural and ordinary meaning. *See United States v. Zheng*, 306 F.3d 1080, 1085 (11th Cir. 2002) (stating that terms left undefined by a criminal statute are ascribed their ordinary and natural meaning and relying on dictionary to interpret undefined terms). To

"remove" is commonly understood as "to move by lifting, pushing aside, or taking away or off." *Remove*, MERRIAM-WEBSTER ONLINE (2021). To "destroy" means "[t]o damage (something) so thoroughly as to make unusable, unrepairable, or nonexistent." *Destroy*, BLACK'S LAW DICTIONARY (11th ed. 2019). To "possess" is "to have in one's actual control" or "to have possession of." *Possess*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Possession" is a common term used in other criminal contexts and may, in terms of "actual possession," be defined as knowingly having direct physical control over a thing at a given time. *United States v. Wright*, 688 F. App'x 262, 263 (5th Cir. 2017) (per curiam) (quoting *United States v. Burton*, 226 F.3d 643, 2000 WL 1029169, at *9 (5th Cir. 2000) (per curiam)) (quotations omitted). To "possess" may also be defined as "the fact of holding property in one's power" and "the exercise of dominion over property." *Possession*, BLACK'S LAW DICTIONARY (11th ed. 2019).

The term "System" refers to the National Wildlife Refuge System, *see id.* § 668ee(14), which "relat[es] to the various categories of areas that are administered by the Secretary for the conservation of fish and wildlife, including species that are threatened with extinction, all lands, waters, and interests therein administered by the Secretary as wildlife refuges, areas for the protection and conservation of fish and wildlife that are threatened with extinction, wildlife ranges, game ranges, wildlife management areas, or waterfowl production areas[,]" *see id.* § 668dd(a)(1). A "refuge" for this purpose is "a designated area of land, water, or an interest in land or water within the System . . . ." *Id.* § 668ee(11).

### C. Elements of § 668dd(c)—Mens Rea

Typically, a finding that a defendant acted with some mental state, either purposely, knowingly, recklessly, or negligently, is necessary before they may be found guilty. *See United States v. M.W.*, 890 F.2d 239, 240 (10th Cir. 1989) (citing MODEL PENAL CODE § 2.02(2)). "In

some limited circumstances, . . . Congress may also create true 'strict liability' crimes, which have no mens rea requirement at all." *United States v. Figueroa*, 165 F.3d 111, 114 n.3 (2d Cir. 1998) (Sotomayor, J.). Because strict liability offenses are "generally disfavored," however, "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." *Staples v. United States*, 511 U.S. 600, 606 (1994).

With respect to § 668(c), Congress meant to provide more stringent penalties when "the person acted 'knowingly,' that is, acted voluntarily and intentionally, not through ignorance, mistake, or accident," and "lower[ ]" penalties "for unintentional violations (those not 'knowingly' committed)." *United States v. Mast*, 938 F.3d 973, 976-77 (8th Cir. 2019) (quoting S. REP. NO. 105-310, at 3 (1998), *available at* 1998 WL 596837) (quotations omitted). Under subsection (f)(1) of the statute, "knowing" violations are subject, in part, to imprisonment for up to one year. *See* 16 U.S.C. § 668dd(f)(1). For other violations charged, as here, under subsection (f)(2), the prison term is up to six months. *See id.* § 668dd(f)(2).

At least one federal circuit court of appeals—the Eighth Circuit—has held that negligence is the proper standard under subsection (f)(2) based on its statutory language and legislative history. *See Mast*, 938 F.3d at 976-77. According to the Eighth Circuit, because words like "voluntary" and "intentional" are generally understood not to refer to negligent conduct, the legislative history "indicates that, in distinguishing between the two types of violations, Congress intended for subsection (f)(2) to proscribe negligent violations."[6] *See id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Negligence refers to the failure to exercise the standard of care that a reasonably prudence person would have exercised in a similar situation.

---

[6] At least two district courts have reached the same conclusion on similar grounds. *See United States v. Kenner*, 238 F. Supp. 3d 1157, 1163-64 (D. Neb. 2017); *United States v. Best*, 2012 WL 3027544, at *4-5 (N.D. Cal. July 24, 2012).

9 / 14

*United States v. Pruett*, 681 F.3d 232, 242 (5th Cir. 2012) (per curiam) (quoting *Negligence*, BLACK'S LAW DICTIONARY (8th ed. 2004)) (quotations omitted).

The above interpretation, however, is not without critique. As noted by a dissenting judge on the Eighth Circuit panel, one who acts without mens rea, just as much as one who acts negligently, commits an "unintentional violation" or one that is "not 'knowingly' committed." *Mast*, 938 at 980 (Colloton, J., dissenting) (quotations omitted). While the Fifth Circuit has not addressed this precise issue, it has interpreted similar statutes, including 16 U.S.C. § 703(a) (the other statute with which Defendant was initially charged here), as creating strict liability offenses.[7] *See United States v. Morgan*, 311 F.3d 611, 613-16 (5th Cir. 2002).

**D. Affirmative Defense**

The language of § 668dd(c) does make room for potential exception. Subsection (c) prohibits the enumerated activities "unless such activities are permitted either under subsection (d) of [§ 668dd] or by express provisions of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof . . . ." 16 U.S.C. § 668dd(c). That said, statutory exceptions are generally construed as affirmative defenses that a defendant has the burden of proving. *See United States v. Kloess*, 251 F.3d 941, 945 (11th Cir. 2001) (collecting cases); *see also United States v. Guess*, 629 F.2d 573, 576 (9th Cir. 1980) ("The well-established rule is that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he

---

[7] With respect to the term "possess" in § 703(a), the Fifth Circuit has also questioned whether the possession "must be more than merely constructive, incidental, or transitory." *United States v. Morgan*, 283 F.3d 322, 327 (5th Cir. 2002) (Jones, J., concurring), *majority opinion withdrawn and superseded*, 311 F.3d 611 (5th Cir. 2002). Otherwise, "affixing strict liability . . . could easily lead to absurd consequences, such as the criminal conviction of a hunter who was simply carrying the ducks of a disabled friend." *Id.* at 327. For present purposes, regardless of whether § 668dd(c) requires a showing of negligence or is a strict liability offense, it can be assumed that the element of "possession" need be actual and more than merely incidental or transitory. As discussed below, Defendant's possession of the items here certainly rose to that level.

comes within the exception.") (internal quotation omitted). The government, therefore, "has neither the obligation to allege an exception in the [charging instrument] nor the burden of going forward on the issue." *United States v. Green*, 962 F.2d 938, 941 (9th Cir. 1992).

### E. Burdens of Proof

As in any jury trial, the judge, as the factfinder in a bench trial, must find that the government has established all the elements of the offense beyond a reasonable doubt. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (citing *In re Winship*, 397 U.S. 358, 361-62 (1970)); *see also United States v. Collazo*, 117 F.3d 793, 795 (5th Cir. 1997).

The phrase "reasonable doubt" means "a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case[,]" while proof "beyond a reasonable doubt" is "proof of such a convincing character that [the factfinder] would be willing to rely and act upon it without hesitation" in finding the defendant guilty. FIFTH CIR. PATTERN (CRIM.) JURY INSTRUCTIONS § 1.05 (2019).

An affirmative defense must be established by the defendant by a preponderance of the evidence. *See United States v. Ramcharan*, 83 F. App'x 667, 670 (5th Cir. 2003) (per curiam).

### V. ANALYSIS

Defendant is an individual and thus a person within the meaning of § 668dd(c). It is also uncontested that the Refuge is part of the System. At issue, then, is whether Defendant, for purposes of the alternate offenses, either (i) removed, destroyed, or possessed personal property of the United States, or (ii) possessed any part of a bird, mammal, or other wild vertebrate.

Clearly, Defendant possessed the salt, wood, bones, and feathers insofar as he exerted direct, physical control over these items by carrying them or having placed them in his backpack.[8]

---

[8] Whether Defendant committed acts of "removal" or "destruction" is a closer question that need not be specifically addressed.

The fact that Defendant had with him a digging tool supports a finding that he dug up the salt from the Refuge. The fact that Defendant carried wood and bones in his arms, apart from his backpack, supports that he had just gathered those items from the Refuge as well. Defendant also admitted to Officer Garcia that he gathered the salt and wood, as well as the bones and feathers, from the Refuge to make decorations. It is uncontested that the salt and wood was personal property of the United States. There is no requirement that the United States have a property interest in the bones and feathers. Instead, the statute criminalizes the mere possession of these items in the Refuge. Unlike as with § 703(a), there is no requirement under § 668dd(c) for the feathers to have been from migratory birds.

The question as to what, if any, mens rea finding is required is largely academic. This is because the record supports a finding that Defendant acted purposely, which mental state determination satisfies all other potentially applicable mens rea requirements.[9] *See M.W.*, 890 F.2d at 240 n.3 (citing MODEL PENAL CODE § 2.02(5)). A person's conduct is purposeful if it is their conscious object to engage in that conduct or cause a particular result. *See* MODEL PENAL CODE § 2.02(2)(a)(i); *see also Borden v. United States*, 141 S.Ct. 1817, 1823 (2021). Defendant acknowledged that he acted purposefully when he told Officer Garcia about his plans for the items.

Another question—hinted at by Mr. Gonzalez's cross-examination of Officer Garcia—is whether Defendant merely *attempted* to violate § 668dd(c). Officer Garcia acknowledged that he encountered Defendant within the boundary of the Refuge, and the items Defendant gathered were presumably seized before he was able to leave that boundary. Nevertheless, the matter of an attempted violation presents a moot question based on § 668dd(c)'s text. The statute proscribes,

---

[9] In *United States v. Crawford*, 2012 WL 1028912 (D. Alaska Mar. 23, 2012), the court acknowledged the government's argument that § 668dd(f)(2) invoked strict liability but, rather than decide the issue, rendered it moot in holding that the government had proved criminal negligence. *See id.* at *7 & n.1.

in relevant part, the destruction, taking, or possession of "any . . . personal property of the United States . . . *in any area of* the System" as well as the possession of "any . . . bird, mammal, or other wild vertebrate . . . animals or part . . . thereof *within any such area* . . . ." 16 U.S.C. § 668dd(c) (emphasis added). Although there appears to be a dearth of authority on this question, the emphasized language implies that taking items outside of a refuge is not necessary for a finding of guilt. It is sufficient for a person to possess an enumerated item within the boundary of a refuge.

Mr. Gonzalez argues that it is the Government's burden to prove that no exception to § 668dd(c)'s general prohibition applies. As noted above, however, statutory exceptions to criminal offenses typically operate as affirmative defenses that must be proved by the defendant, and Mr. Gonzalez offers nothing by way of authority to modify this general rule in the current situation.[10] Otherwise, the provisions of federal law cited to by Mr. Gonzalez do not create an applicable exception for Defendant's offense conduct. Subsection (d) merely authorizes the Secretary to permit the use of a refuge for purposes such as hunting, fishing, public recreation, and accommodation, *see* 16 U.S.C. § 668dd(d), while the pertinent provision of subsection (e) merely requires the Secretary to identify "opportunities for compatible wildlife-dependent recreational uses" when developing a comprehensive conservation plan, *see id.* § 668dd(e)(2)(F). The same can be said of the Plan, Executive Order 12,996, and 43 C.F.R. § 3622.4, each of which constitute *directives* that *the Secretary* or other officials authorize certain recreational activities; they do not, by themselves, constitute authorizations for members of the public to engage in those activities.[11]

---

[10] Indeed, it would be practically impossible for the Government to prove the negative that no authority allowed the offense conduct.

[11] Even if they did constitute public authorizations, Defendant's conduct did not fit neatly within any of the categories of activities specifically mentioned by the Plan and Executive Order 12,996 (i.e., hunting, fishing, wildlife observations and photography, and environmental education and interpretation) and 43 C.F.R. § 3622.4 (i.e., removal of *petrified* wood).

Lastly, because the Plan's material detraction language applies only to the Secretary, the argument that Defendant's activities will have a de minimis effect on the Refuge is irrelevant.

## VI. CONCLUSION

For these reasons, the undersigned Magistrate Judge finds and adjudges Defendant GUILTY of the cited offense.

Accordingly, a sentencing hearing is hereby SCHEDULED in person before the undersigned **at 11:45 a.m. on October 22, 2021.**

IT IS SO ORDERED.

DONE at McAllen, Texas this 4th day of October 2021.

_____
J. SCOTT HACKER
United States Magistrate Judge