IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NOS. 7:21-PO-00001 |
| | § | 7:21-PO-00002 |
| | § | McALLEN, TEXAS |
| VERSUS | § | FRIDAY, |
| | § | SEPTEMBER 10, 2021 |
| EDUARDO LEAL | § | 3:39 P.M. TO 4:33 P.M. |

BENCH TRIAL

BEFORE THE HONORABLE J. SCOTT HACKER
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| APPEARANCES: | SEE NEXT PAGE |
| COURTROOM ERO: | SANDRA A. SILVA |
| OFFICIAL INTERPRETERS: | CHRISTINA HELMERICHS |
| | WOODY LEWIS |

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

<u>APPEARANCES</u>:


FOR THE UNITED STATES OF          OFFICE OF THE US ATTORNEY
AMERICA:                          Devin V. Walker, Esq.
                                  1701 W. Business Hwy. 83
                                  Suite 600
                                  McAllen, TX 78501
                                  956-992-9365


FOR DEFENDANT EDUARDO LEAL:       FEDERAL PUBLIC DEFENDERS OFC
                                  Christopher G. Gonzalez, Esq.
                                  1701 W. Business Hwy. 83
                                  Suite 450
                                  McAllen, TX 78501
                                  856-630-2995


ALSO PRESENT:                     Romeo Garcia, Witness

<u>INDEX</u>

OPENING STATEMENTS:
 By Mr. Gonzalez                    7

| WITNESSES: | <u>Direct</u> | <u>Cross</u> | <u>Redirect</u> | <u>Recross</u> | VOIR<br><u>DIRE</u> |
|---|---|---|---|---|---|
| ROMEO GARCIA |  |  |  |  |  |
| By Ms. Walker | 12 | . | . | . | . |
| By Mr. Gonzalez | . | 32 | . | . | . |

| EXHIBITS: | <u>Marked</u> | <u>Offered</u> | <u>Admitted</u> |
|---|---|---|---|
| Government's |  |  |  |
| Exhibit No. 1 | 15 | 32 | 32 |
| Exhibit Nos. 2 and 3 | 19 | 32 | 32 |
| Exhibit No. 4 | 20 | 32 | 32 |
| Exhibit Nos. 5, 6, 7 | 22 | 32 | 32 |
| Exhibit No. 8 | 23 | 32 | 32 |
| Exhibit No. 9 | 12 | 32 | 32 |
| Exhibit No. 10 | 32 | 32 | 32 |

CLOSING ARGUMENTS:
 By Ms. Walker                    34, 39
 By Mr. Gonzalez                  37

...

1          HOUSTON, TEXAS; FRIDAY, SEPTEMBER 10, 2021; 3:39 P.M.

2               THE COURT:  All right.  I'm calling 21-PO-001 and

3     21-PO-002, the United States versus Eduardo Leal.

4               MS. WALKER:  Good afternoon, Your Honor.  Devin

5     Walker on behalf of the United States.  Present and ready to

6     proceed.

7               MR. GONZALEZ:  Good afternoon, Your Honor.  Chris

8     Gonzalez for Mr. Leal, present and ready to proceed.

9               THE COURT:  All right.  Mr Leal, would you please

10    come up.

11              And like I said, I know we still got concerns with

12    COVID, whatever you two feel comfortable with as far as

13    spacing, at least feel --

14              MR. GONZALEZ:  Thank you, Your Honor.

15              THE COURT:  All right.  I assume the bench trial is

16    still on since we --

17              MR. GONZALEZ:  Yes, Your Honor.  Yes, Your Honor, I

18    believe the Government has an announcement as to one of the

19    two violations that are charged, and they may want to move to

20    amend the charge that the Government's proceeding on.  But I

21    will leave that to Ms. Walker.

22              THE COURT:  All right.  Ms. Walker?

23              MS. WALKER:  Yes, Your Honor, the Government would

24    move to dismiss the 16 USC 703 violation.  We'll be proceeding

25    solely on 16 USC 668dd.  We would also amend that offense

1    description to include the taking of bird feathers and salt.

2              THE COURT:  Taking of bird feathers?

3              MS. WALKER:  Yes, Your Honor.

4              THE COURT:  And salt?

5              MS. WALKER:  Yes, Your Honor.

6              THE COURT:  Now you said the offense under 16 USC

7    703, it looks like to me that's Case 21-PO-02, you're moving

8    to orally dismiss it?

9              MS. WALKER:  Yes, Your Honor.

10             THE COURT:  Any objection, Mr. Gonzalez?

11             MR. GONZALEZ:  No objection, Your Honor.

12             THE COURT:  All right.  That'll be granted.  Now I

13   assume it's dismissal without prejudice?

14             MS. WALKER:  Yes, Your Honor.

15             THE COURT:  All right.  Now Case Number 21-PO-01,

16   amending the complaint to taking -- I'm sorry, how did you

17   phrase that, because I did some shorthand, now I can't read my

18   writing.

19             MS. WALKER:  Yes, Your Honor, we would just move to

20   amend the complaint to include, in addition to the other items

21   already listed in the complaint, to include bird feathers and

22   salt.

23             THE COURT:  Okay.  Any objection, Mr. Gonzalez?

24             MR. GONZALEZ:  No objection, Your Honor.

25             THE COURT:  All right.  The Court will grant the

1    amendment.

2                Any other announcements from the Government?

3                MS. WALKER:  No, Your Honor.

4                THE COURT:  Mr. Gonzalez?

5                MR. GONZALEZ:  No announcement, Your Honor.

6                THE COURT:  All right.  Ms. Walker, you can call

7    your first witness.

8                MS. WALKER:  Yes, Your Honor, the United States will

9    all Officer Romeo Garcia.

10               THE COURT:  Do you want to give an opening

11   statement?  I think I technically have to ask you that, even

12   though it's a bench trial.

13               MS. WALKER:  We'll waive it, Your Honor.

14               THE COURT:  Do you want to give one, Mr. Gonzalez?

15               MR. GONZALEZ:  Your Honor, I would like to.

16               THE COURT:  Okay.

17               MR. GONZALEZ:  And I would also -- I've already

18   tendered to the Government exhibits, defense exhibits.  The

19   Government has no objection to them.  They're actually just

20   legal resources for the Court to take into consideration.  I

21   believe it would be useful to the Court in assessing the

22   evidence.

23               So if I may approach and introduce these four

24   exhibits, Your Honor?

25               THE COURT:  How many exhibits are there?

1        MR. GONZALEZ:  There's four exhibits.

2        THE COURT:  Numbered Defendant's Exhibits 1, 2, 3,

3   and 4?

4        MR. GONZALEZ:  Yes, Your Honor, I have them labeled.

5        THE COURT:  No objection, Government?

6        MS. WALKER:  No, Your Honor.

7        THE COURT:  All right.  They're admitted into the

8   Record.

9     (Defendant's Exhibit Nos. 1 through 4 received into

10   evidence.)

11        MR. GONZALEZ:  May I approach, Your Honor?

12        THE COURT:  Sure.

13     (Pause in the proceedings.)

14        THE COURT:  All right.  Thank you.

15        MR. GONZALEZ:  And may I proceed with an opening,

16   Your Honor?

17        THE COURT:  Yes.

18          OPENING STATEMENT ON BEHALF OF DEFENDANT

19        MR. GONZALEZ:  The only reason why I did not want to

20   waive an opening is because it looks like in this case, Your

21   Honor, the Government and the defense may disagree regarding

22   the legal standard the Court would be applying in assessing

23   the evidence here.

24        THE COURT:  All right.

25        MR. GONZALEZ:  The Court is looking at -- I'm

1    referencing here at Defense Exhibit 1, this is the charge that

2    the Government is proceeding on, Your Honor.  Not under the

3    Migratory Bird Act.  It is under this sort of resource

4    management program administration.  If the Court goes to

5    Page 4 of Defense Exhibit 1, it has essentially the statute

6    that creates a criminal offense here, and it's been

7    highlighted for Your Honor on subsection (c).

8              THE COURT:  All right.

9              MR. GONZALEZ:  It provides that -- in basic terms it

10   just says that you can't remove personal property of the US on

11   a US refuge.  And then I've highlighted where it says, "Unless

12   such activities are permitted, either under subsection (d) of

13   this section or by express provision of law, proclamation,

14   executive order or public land order establishing the area or

15   amendment thereof."

16             So part of an element of this offense, Your Honor,

17   is that -- at least our position is the Government will have

18   to negate that any taking here was permitted.  And they have

19   to establish it was prohibited under subsection (d) or any

20   executive order.

21             If the Court flips over to Page 5, subsection (d)

22   provides use of areas and it states that the Secretary is

23   authorized to permit the use of any area within the system for

24   any purpose including but not limited to hunting, fishing,

25   public recreation, and accommodations, and access whenever he

1    determines, the Secretary determines that such uses are

2    compatible with the major purposes for which the areas were

3    established.

4           Your Honor, regarding compatibility, if the Court

5    flips over a couple of pages to 7, subsection (e) of this

6    section, it contemplates a conservation plan, a refuge

7    conservation plan, and it requires the Secretary to propose

8    and essentially to effectuate a Comprehensive Conservation

9    Plan for each refuge.  The Sal del Rey has that plan, Your

10   Honor.  And that plan -- let me back up.

11          On Page 7, so this section contemplates that a plan

12   should be promulgated to govern conservation activities on the

13   refuge.  If the Court flips over to Page 8 of the law,

14   Subdivision 2 provides that in developing each Comprehensive

15   Conservation Plan the Secretary shall identify and describe

16   several things in this plan.  Subsection (f) here is the

17   opportunity for compatible wildlife-dependant recreational

18   uses.

19          The Sal del Rey has such a plan, Your Honor, and

20   we've -- it's Defense Exhibit Number 2.

21          THE COURT:  All right.

22          MR. GONZALEZ:  Defense Exhibit Number 2 is Page 55.

23   The Court has the cover page, it was promulgated back in the

24   '90s, Your Honor.  I'm not sure if it's been renewed, but this

25   is the refuge plan for our area, and Page 55, if the Court

1    flips to the second page of Defense Exhibit 2, it's 5.5 of the

2    plan, it provides a public use, recreation and wildlife

3    interpretation and education.

4              If the Court looks at Goal Number 2, Goal Number 2

5    is to offer compatible wildlife-dependent public access and

6    recreational opportunities on tracts of the Lower Rio Grande

7    Valley that result in furthering the public's appreciation of

8    the Lower Rio Grande Valley area, of ecological concern and

9    the National Wildlife Refuge system.  It says, "This will be

10   done by the provision of wildlife observation, photography,

11   fishing and hunting, recreational opportunities in accordance

12   with Executive Order 12996."

13             THE COURT:  Where are you reading that at, I mean --

14             MR. GONZALEZ:  I'm reading on Page 55, Defense

15   Exhibit 2, Your Honor.

16             THE COURT:  Okay.

17             MR. GONZALEZ:  It's -- the Court has two pages --

18             THE COURT:  I see where, you had it highlighted.

19             MR. GONZALEZ:  Okay.

20             THE COURT: Go ahead.

21             MR. GONZALEZ:  And, Your Honor, I'm almost done

22   here, but I think this will help the Court to analyze the

23   issue here.  But Footnote 37 is really important.  This is the

24   Sal del Rey plan.  It establishes recreational uses are

25   considered compatible when they do not materially detract from

1    or interfere with the purposes for which the refuge is

2    established.

3              And, Your Honor, Exhibit Number 3, Defense Exhibit

4    Number 3, if the Court turns the page, is the executive order

5    of President Clinton in the '90s signing, which is referenced

6    in the Sal del Rey plan.  And it essentially promotes

7    interaction with the environment, fostering wildlife and

8    recreational activities.

9              And so the point I'm trying to make here, Your

10   Honor, is it's not as cut and dried to establish a violation

11   here simply by saying, "Well, these items Mr. Leal had in his

12   possession, he took them and the sign said you weren't

13   supposed to take them."  It may be that he wasn't following

14   rules, but the question is whether a violation of federal law

15   occurred.  And the federal law references executive orders, by

16   implication it references plans that are vague in nature, Your

17   Honor.

18             And I think it's going to come down to a question

19   whether what Mr. Leal did materially disrupted -- it's

20   under -- it's on Footnote 37, materially disrupted or

21   interfered with the purpose of the refuge.  And I know the

22   Government may have arguments to the contrary, but I wanted to

23   offer that opening statement as the Court looked -- or listens

24   to the evidence.

25             THE COURT:  All right.

ROMEO GARCIA - DIRECT BY MS. WALKER

1          MR. GONZALEZ:  Thank you.  I have nothing further.

2          THE COURT:  Ms. Walker?

3          MS. WALKER:  Your Honor, the Government will call

4    Officer Garcia.

5          THE COURT:  All right.  Officer Garcia, would you

6    please raise your right hand and take an oath before the

7    Court.

8       (Witness sworn.)

9          THE COURT:  All right.  Please be seated.

10         Government, you can proceed with your line of

11   questioning.

12         MS. WALKER:  Thank you, Your Honor.

13                    DIRECT EXAMINATION

14   BY MS. WALKER:

15   Q    Good morning -- good afternoon, Officer Garcia.  Could

16   you please state your name and occupation?

17   A    Romeo Garcia, Senior Federal Wildlife Officer.

18   Q    And who are you employed with?

19   A    The US Fish and Wildlife Service.

20         THE COURT:  And hold on.  Do you -- is the seat okay

21   with you?

22         INTERPRETER LEWIS:  It's fine, Your Honor.

23         THE COURT:  Okay.  I just want to make sure.

24         INTERPRETER LEWIS:  I just want to try to get in the

25   right mind so that the Defendant can hear.

1         THE COURT:  I want to make sure he can, that's why

2  I -- if you need the process to slow down a little bit,

3  Mr. Lewis --

4         INTERPRETER LEWIS:  No, it's fine.

5         THE COURT:   -- please let us know.

6         INTERPRETER LEWIS:  Yeah.

7         THE COURT:  Go ahead, Mr. Walker -- Ms. Walker.

8         MS. WALKER:  Thank you, Your Honor.

9  BY MS. WALKER:

10  Q   How long have you been employed with Fish and Wildlife?

11  A   A little over 11 years.

12  Q   And at Fish and Wildlife what are some of your job

13  duties?

14  A   So my duties, they vary depending on the time of the

15  year.  As an officer I do in hunting season, you know, hunting

16  compliance checks on some of the current hunts that we have on

17  federal land; on the coast, fishing compliance checks.  Some

18  of the main duties too, you know, is to make sure that the --

19  all the visitors on our national wildlife refuge, they're

20  safe.

21         Some of my duties also is to patrol all the little

22  parcels of land that we have scattered all the way from the

23  Boca Chica Beach west to the (indiscernible) in north to Sal

24  del Rey in the area a little south of the Checkpoint.  We

25  protect the habitat.  I do a lot of investigation for poaching

14

1    cases, I walk a lot of fence line and most importantly protect

2    the visitors from the wildlife or protecting the wildlife from

3    the visitors or protecting some of the visitors from other

4    humans on the area.

5    Q    As part of some of your job duties do you also enforce

6    federal laws?

7    A    Yes, I do.

8    Q    Okay.  And drawing your attention to October 18 of 2020

9    were you working on that day?

10   A    Yes, ma'am.

11   Q    And where were you working?

12   A    That Sunday I headed out to the area of Sal del Rey

13   National Wildlife Refuge.  Along the area we have some other

14   refuge tracts, (indiscernible) on County Road 1020 and 30.

15   Some of those are refuges at the time we're opening -- we're

16   open for hunting.  So I was conducting hunting compliance

17   checks, I was investigating poaching, I was making contact

18   with hunters, and at the same time Sal del Rey is open to the

19   public, so I was making contact with visitors.

20              MS. WALKER:  May I approach, Your Honor?

21              THE COURT:  Yes.

22        (Pause in the proceedings.)

23   BY MS. WALKER:

24   Q    Officer, I'm handing you what's been marked as Government

25   Exhibit 1.

1    A    Okay.

2         (Government Exhibit No. 1 identified.)

3    BY MS. WALKER:

4    Q    Do you recognize this?

5    A    If I recognize the area?

6    Q    Yes.

7    A    Yes, ma'am.

8    Q    And what is the -- what is that?

9    A    The map shows the Sal del Rey National Wildlife Refuge,

10   an aerial view of the Sal del Rey.

11   Q    Okay.  Okay.  Is Sal del Rey a federally classified

12   wildlife refuge?

13   A    Yes, ma'am.  The Sal del Rey is part of one of the tracts

14   that compose the Lower Rio Grande Valley National Wildlife

15   Refuge, or the South Texas Refuge Complex.

16   Q    What county is it in?

17   A    This is Hidalgo County.

18   Q    Okay.  When you work at Sal del Rey what are some of the

19   typical duties that you have there?

20   A    Okay.  Considering that Sal del Rey National Wildlife

21   Refuge is open to the public, one of my main duties is to make

22   sure that the visitors, you know, are safe in there.  There's

23   times of the year where the visitors do a lot of hiking and

24   not being familiar with the land, the topography, the

25   vegetation and the climatic conditions, I conduct a lot of

1    search and rescues in the area.  So I patrol the area to make

2    sure that everybody is safe while visiting the lake.  And a

3    lot of times at the same time I am conducting, at Sal del Rey

4    in particular since it's open for hunting, I conduct a lot of

5    birds and lot of big game biological service, ma'am.

6    Q    On this particular day, October 18 of 2020, what did you

7    do on Sal del Rey?

8    A    Like I was just explaining I was conducting my typical

9    patrol on some of the gravel roads --

10   Q    Okay.

11   A     -- on the borderlands, on the perimeter of Sal del Rey.

12   I noted a wine colored vehicle that was parked in an area that

13   is not designated as a parking spot for the visitors.  That

14   road, that entrance,  it's a service road for employees of the

15   US Fish and Wildlife.  And that was early in the morning.

16   Q    Okay.  Officer Garcia, are there visitor entrances to Sal

17   del Rey?

18   A    Yes.

19   Q    How many?

20   A    We have two designated areas that are open as parking for

21   the public.

22        MS. WALKER:  Your Honor, may I approach the witness?

23        THE COURT:  Yes.

24   BY MS. WALKER:

25   Q    Officer, I'm going to hand you a Sharpie.  Could you

1       please mark the visitor area --

2       A    The parking area?

3       Q     -- the parking areas with an X.

4       A    Okay.  So we have one on Highway 186, we have another

5       entrance on --

6              THE COURT:  Mr. Gonzalez, if you want to get up here

7       and look at what he's marking so that you can see what's going

8       on.

9              MR. GONZALEZ:  Yes, Your Honor.

10      BY MS. WALKER:

11      Q    And could you please mark with a circle where you

12      observed the vehicle?

13      A    (Marks exhibit.)

14             THE COURT:  Can you see that?

15             MR. GONZALEZ:  Yes, Your Honor.

16             THE WITNESS:  Okay.  Here, you need this back or --

17             MS. WALKER:  (Indiscernible).

18             MR. GONZALEZ:  Your Honor, I'm prepared to stipulate

19      at this point that where Mr. -- where the officer encountered

20      Mr. Leal was not in a place designated.

21             THE COURT:  Okay.

22             MR. GONZALEZ:  I mean, I'm not sure if that's where

23      the Government's going with this.

24             MS. WALKER:  Yes.

25             MR. GONZALEZ:  Okay.

1          THE COURT:  All right.

2     BY MS. WALKER:

3     Q     After you first observed the vehicle did you check it

4     again later that day?

5     A     Yes, ma'am.  Like I was saying, I had conducted a few

6     search and rescues in the area due to heat exhaustion, so I

7     observed the vehicle, I continued with my patrol to the other

8     refuges on the east side of Sal del Rey, and around

9     2:00 o'clock, working (indiscernible) hours, I came back to

10    the area, the same road, Chapa Road, and observed the vehicle

11    in the same spot with nobody around.

12    Q     And at that point what did you do next?

13    A     Well, considering the circumstances of some of the

14    previous cases I had with some of the visitors, I decided to

15    conduct an internal patrol inside the Sal del Rey to make sure

16    that the owner of the vehicle was safe.  I opened the gate, I

17    drove into the Sal del Rey, I closed the gate and as I

18    continued on that road southbound I observed Mr. Leal walking

19    towards my way.  He was exiting -- or attempting to exit the

20    refuge.

21    Q     Okay.

22          MS. WALKER:  Your Honor, may I have continuing

23    permission to approach the witness?

24          THE COURT:  Sure.

25          (Pause in the proceedings.)

1    BY MS. WALKER:

2    Q    Officer, I'm handing you Government Exhibits 2 and 3.

3         (Government Exhibit Nos. 2 and 3 identified.)

4    BY MS. WALKER:

5    Q    Do you recognize those?

6    A    Yes, ma'am.

7    Q    And --

8              MR. GONZALEZ:  No objection, Your Honor.

9    BY MS. WALKER:

10   Q    -- could you explain -- could you describe what that

11   shows?

12   A    Okay.  So this is an image of Mr. Leal as I exited my

13   patrol vehicle.  Like I said, I was looking for an individual

14   to make sure that he was safe, that he was not in distress.

15   When I observed Mr. Leal he was -- he had some wood and

16   wildlife bones on his hands and he was carrying a backpack

17   that appeared to be fully saturated with items inside.  And

18   also he seemed like to be a little -- his clothing seemed to

19   be -- you know, the temperatures were high that day and he was

20   soaked.  I asked him if he was okay; he said, yes, that he was

21   fine, that he had just got in the water at Sal del Rey.

22   Q    Okay.  And you stated that you had identified this

23   person?

24   A    Yes, ma'am.

25   Q    Was that through a driver's license?

ROMEO GARCIA - DIRECT BY MS. WALKER

20

1    A    It was through a driver's license, correct.

2    Q    Okay.  And who was that identified as?

3    A    Eduardo Leal.

4    Q    Do you see Eduardo Leal here today?

5    A    Yes, ma'am.

6    Q    Could you please say something he's wearing?

7    A    Eduardo is wearing a black suit with a green tie.

8         MS. WALKER:  May the Record reflect he's identified

9    the Defendant?

10        THE COURT:  All right.  The Record will so reflect.

11   BY MS. WALKER:

12   Q    And your testimony is that you observed that he was

13   carrying items to include wood and wildlife bones.

14   A    Correct.

15   Q    Okay.  And he also had a backpack?

16   A    Yes, ma'am.

17   Q    Did he provide the contents of his backpack to you?

18   A    After talking with him for a while he opened the backpack

19   and we were able to see what was in there, yes.

20        MR. GONZALEZ:  The Government handed what's been

21   marked as Government's Exhibit 4, and I have no objection,

22   Your Honor.

23        THE COURT:  All right.

24        (Government Exhibit No. 4 identified.)

25   BY MS. WALKER:

21

1    Q    I'm handing you Government Exhibit 4.  Do you recognize

2    this?

3    A    Yes, ma'am.

4    Q    And what does this depict?

5    A    This is the backpack that he was carrying.  I asked Mr.

6    Leal if he'd place all of the wildlife bones and the wood he

7    was carrying, to put it on the gravel road.  As he moved to

8    the gravel road I observed a few feathers sticking out of

9    the -- or I observed a feather actually sticking out the

10   backpack.  I asked him what he -- if he had any more items

11   that he had collected from the refuge in his backpack, and he

12   said he had all personal belongings.

13        I asked him a second time I needed, you know, what

14   he was carrying in there, if he was actually taking anything

15   else from the refuge.  He put down the backpack and as he

16   opened he was in possession of more wood, a little bit more

17   bones, there was a red -- I mean it was green colored box that

18   was -- that had some salt from the lake.  There was some

19   crystals, there was a jar containing marijuana, and --

20        MR. GONZALEZ:  Objection, Your Honor, relevance.

21        THE WITNESS:   -- digging tools.

22        THE COURT:  Well, what's the point?  He's just

23   saying what's in his backpack.

24        MR. GONZALEZ:  Your Honor, I believe this is a trial

25   about what he took that was from the refuge.  References to

1    marijuana I don't see the relevance and I think it's unfairly

2    prejudicial.

3            THE COURT:  Well, I guess the point is, it's a bench

4    trial, I've already heard it, I can't un-hear it.  I mean --

5            MR. GONZALEZ:  Understood, Your Honor.

6            THE COURT:  -- put it in context of what he's being

7    accused of.

8            THE WITNESS:  May I proceed?

9            THE COURT:  Yes, go ahead.

10   BY MS. WALKER:

11   Q    Did you -- Officer, did you photograph these items?

12   A    Yes, I did.

13   Q    I'm handing you Government Exhibit 5, Government Exhibit

14   6 and Government Exhibit 7.

15           (Government Exhibit Nos. 5, 6 and 7 identified.)

16   BY MS. WALKER:

17   Q    Do you recognize these photographs?

18   A    Yes, ma'am.  I see the feathers, that he had some in his

19   backpack and some other wood that he pulled from the backpack

20   he was carrying, a digging tool there, bungie cords, and some

21   smoking pipe that he also had in his -- in the backpack.

22           (Pause in the proceedings.)

23   BY MS. WALKER:

24   Q    What, if anything, was significant about discovering a

25   digging tool?

1    A    What was significant about finding the digging tool?

2    Q    Yes.

3    A    Well, visitors are not allowed to be taking anything out

4    of the refuge.  Mr. Leal said that he was -- he was in the

5    water on the lake on Sal del Rey and he had taken some salt,

6    and we assumed that he utilized that digging tool to get some

7    of that salt that he had in the green box where he had the

8    crystals.

9    Q    I'm handing you Government Exhibit 8.

10        (Government Exhibit No. 8 identified.)

11   BY MS. WALKER:

12   Q    Do you recognize that?

13   A    Yes, ma'am.

14   Q    Okay.  And what is that?

15   A    (Indiscernible) there's a digging tool and that's the

16   digging tool that I got from the backpack.

17   Q    Okay.  And I'm also handing you Government Exhibit 9.

18        (Government Exhibit No. 9 identified.)

19   BY MS. WALKER:

20   Q    Do you recognize that?

21   A    Yes, ma'am, this is a picture I took once I got back to

22   my office and I got everything on a table, everything that I

23   collected and seized from Mr. Leal.  It includes the 31

24   feathers, the wing, the salt, the box and some of the crystals

25   that he had.

1         THE COURT:  Mr. Gonzalez, do you have copies of all

2    these exhibits?

3         MR. GONZALEZ:  Yes, Your Honor.

4         THE COURT:  All right.  Go ahead.

5    BY MS. WALKER:

6    Q    And, Officer Garcia, you stated earlier that the

7    Defendant had made statements regarding these items that he

8    took.

9         INTERPRETER LEWIS:  Your Honor, the interpreter

10    didn't quite catch the last part of the --

11         THE COURT:  All right.  Please --

12         INTERPRETER LEWIS:   -- the Government's phrase.

13         MS. WALKER:  Yes, Your Honor.

14    BY MS. WALKER:

15    Q    Officer Garcia, you stated earlier that the Defendant had

16    made statements regarding these items?

17    A    Yes.  When I made contact with him he explained to me

18    when I first encountered after exiting my vehicle that he was

19    an artist, that he was collecting what he translated to dead

20    wood, *madera muerta*, and that he was going to do some -- that

21    he uses some of that stuff that he collects (indiscernible).

22    Q    Are you familiar with the Comprehensive Conservation Plan

23    for Sal del Rey?

24    A    Yes.

25         THE COURT:  Let me ask, Government, are you

ROMEO GARCIA - DIRECT BY MS. WALKER

25

1    admitting Exhibits 1 through 9 in the Record?

2              MS. WALKER:  Yes, Your Honor.  I was going to move

3    to admit them at the very end.

4              THE COURT:  You can do it whenever you want to, I

5    just -- go ahead.

6          (Pause in the proceedings.)

7    BY MS. WALKER:

8    Q    Officer Garcia, do you recognize that?

9    A    Yes, ma'am.  I've seen this document, it's what we call

10   the CCP, the Conservation -- the Comprehensive Conservation

11   Plan.

12   Q    Okay.  I'm going to draw your attention to Page 6.  Could

13   you please, Goal 1?

14   A    Page 6, Goal 1, protect biological diversity, land and

15   waters, to restore, enhance and protect the natural diversity

16   of the Lower Rio Grande Valley including threatened and

17   endangered species on and off refuge lands and land

18   acquisition, management of habitat and wildlife resource and

19   refuge lands, strengthening existing and establishing new

20   (indiscernible) efforts.

21   Q    And I'm going to draw your attention to Page 7.

22   A    Page 7.

23   Q    Could you please read Goal 5?

24   A    Goal 5, provide compatible wildlife with dependent public

25   uses, recreational opportunities, interpretation and

ROMEO GARCIA - DIRECT BY MS. WALKER

1    education.  Continue to offer the quality -- a quality
2    wildlife observation trial system on the Santa Ana National
3    Wildlife Refuge, offer compatible wildlife-dependent public
4    access in certain tracts of the LRGV National Wildlife Refuge,
5    continue wildlife interpretation and educational efforts at
6    Santa Ana National Wildlife Refuge and initiate interpretive
7    efforts for LRGV, Lower Rio Grande Valley National Wildlife
8    Refuge in coordination with private groups and other
9    jurisdictions.
10   Q    Officer Garcia, what is interpretative efforts as
11   outlined in Goal 5, what does that mean?
12   A    So one of the activities that is compatible on a
13   national wildlife refuge it's interpretation.  So
14   interpretation we have park rangers that bring groups of
15   people and they do presentations on what we have on a
16   particular refuge, in this particular case like all the rain,
17   or like they establish in Santa Ana that are open to the
18   public.  They provide a little bit of history, they talk about
19   the habitat, they talk about the wildlife and being informed
20   of these lands and the Lower Rio Grande Valley.
21   Q    So essentially it would be park rangers teaching
22   visitors.
23   A    That is correct, ma'am.
24   Q    Okay.  Is there any provision in that Comprehensive
25   Conservation Plan that allows visitors to remove items from

1    Sal del Rey?

2    A    No, ma'am.

3    Q    Okay.  And, in fact, is there any other rule that allows

4    visitors to remove items of Sal del Rey?

5    A    No, ma'am, nobody's allowed to take anything.

6    Q    So just to be clear, visitors -- are visitors permitted

7    to take items from Sal del Rey?

8    A    No, ma'am.

9    Q    Not even salt?

10   A    No, ma'am.

11   Q    Could they take a branch?

12   A    No, ma'am.  Everything on the wildlife refuge is

13   protected and nobody's supposed to be taking anything.

14   Q    Okay.  Could they take one feather?

15   A    No, ma'am.

16   Q    And certainly not over 30 feathers.

17   A    No, ma'am.

18   Q    Okay.  And if someone did take these items, that would be

19   a violation of federal law?

20   A    That is correct.

21   Q    Okay.  And, in fact, in this instance you did cite the

22   Defendant for engaging in such conduct?

23   A    Correct.

24   Q    Okay.

25             MS. WALKER:  May I have a moment, Your Honor?

1      THE COURT:  Go ahead.

2          (Pause in the proceedings.)

3          MS. WALKER:  Your Honor, may I approach the witness

4      briefly?

5          THE COURT:  Yes.

6          (Pause in the proceedings.)

7      BY MS. WALKER:

8      Q   Officer, I'm handing you -- well, I'm drawing your

9      attention to Government's Exhibits 6 and 9.  And these are the

10     items that you found the Defendant's possession, would that be

11     accurate to say?

12     A   Yes, ma'am.

13     Q   Okay.  And could you just, just for clarification, just

14     provide a summary of what those items were.

15     A   So Mr. Leal, when I encountered him, he was in possession

16     of wood, he was in possession of wildlife bones, he was in

17     possession of the digging tool, he was in possession of 31

18     feathers, he was in possession of 7 pipes, the marijuana that

19     was in the jar, he was also in possession of some crystals,

20     rocks and crystals that were located inside the green box, and

21     the salt that he said that he was -- he had collected from the

22     salt lick.

23         THE COURT:  Just so I can be clear, are you -- I

24     don't think you're saying this but I just want to make sure

25     I'm clear, he -- you're not saying that he was taking the

1    marijuana off of the reserve with him.  Right?  It was just --

2            MS. WALKER:  Correct, Your Honor, we're not --

3            THE COURT:  He wasn't taking it off the reserve, he

4    was -- just had it with him.

5            MS. WALKER:  Yes.

6            THE COURT:  All right.  Go ahead.  I just want to

7    make sure that you weren't -- that I wasn't missing something,

8    that that was like the bird feathers, the rocks or something

9    else he was taking from the protected area.

10            MS. WALKER:  No, Your Honor.  May I have a brief

11   moment, Your Honor?

12            THE COURT:  Yes.

13        (Pause in the proceedings.)

14   BY MS. WALKER:

15   Q    Officer Garcia, how could taking these items affect the

16   refuge?

17            INTERPRETER LEWIS:  Your Honor, can she repeat that?

18            THE COURT:  Yeah, please repeat that.

19            MS. WALKER:  Yes.

20   BY MS. WALKER:

21   Q    Officer Garcia, how could taking these items affect the

22   refuge?

23   A    Yeah, so the integrity of the refuge is -- or the main

24   purpose of the refuge, it provides and houses a lot of home

25   for a lot of different animals and different wildlife species

1   to include the habitat.  The Sal del Rey in particular, this

2   place, that was established to maintain the migration, you

3   know, it provides home for all these migrating birds that we

4   get every year.

5        The history of this particular place is also -- it

6   was a big part of establishing this refuge, the history of

7   this place when it comes to the salt lick is all the way to

8   when the king from Spain used to collect all this salt and it

9   was transported all the way over there, even by some of our

10  neighbors here in Mexico.

11       Before the NBTA was established there was a lot of

12  people hunting, everybody got guns and everybody was shooting

13  everything that they would see flying.  When the NBTA was

14  established it marked the lines for people to really start

15  protecting some of these lands, it created the lands

16  protecting some of these issues.

17       Now that it's a wildlife refuge, since 1992 Sal del

18  Rey was -- that was when it was acquired, it provides a

19  glimpse of -- to the public of what it used to be and why we

20  protect some of these lands that we are protecting under the

21  US Fish and Wildlife.  Like I said, this is just one

22  particular spot, or terrain, or land amongst 100 others.

23  We -- Sal del Rey is open to the public, it brings a lot of

24  visitors from all over the country.  They want to go see the

25  salt, they want to go see the wildlife, they want to

1    appreciate the history and the culture of the Sal del Rey.

2    And then also it provides an opportunity for people interested

3    in birding, you know, to see all these feathers of migrating

4    birds coming through there when they come into the refuge

5    without actually being engaged in the activity of hunting or

6    take those migrating birds.

7              The Sal del Rey is one of those places that brings

8    people, again, from all over the place.  We bring a lot of

9    schools from the community and we educate a lot of kids about

10   the history and habitat of the natural wildlife that we

11   currently have here in South Texas.

12             So the taking of this items, it would be detrimental

13   to the integrity of the refuge as far as the educational

14   purpose for the kids or the future generations, and the take

15   of these items, you know, eventually in the future would

16   definitely cause a significant impact on the habitat of future

17   wildlife in the area passing through or nesting or resting or

18   mating at the Sal del Rey.

19   Q    Thank you.

20   A    Yes, ma'am.

21             THE COURT:  Judge, the Government has no further

22   questions, Your Honor.

23             THE COURT:  All right.  Mr. Gonzalez?

24             MS. WALKER:  We would move --

25             THE COURT:  Oh, go --

1          MS. WALKER:  We would move to admit Government --

2     all Government Exhibits 1 through 10.

3               THE COURT:  Any objection, Mr. Gonzalez?

4               MR. GONZALEZ:  No objection, Your Honor.

5               THE COURT:  All right.  They're admitted.

6          (Government Exhibit Nos. 1 through 10 received in

7     evidence.)

8               MR. GONZALEZ:  May I proceed, Your Honor?

9               THE COURT:  Yes.

10                 CROSS-EXAMINATION OF ROMEO GARCIA

11    BY MR. GONZALEZ:

12    Q    Good afternoon, Mr. Garcia -- Officer Garcia.  I just

13    have a few questions following up on what you had just

14    mentioned of how the items Mr. Leal took could materially --

15    or could affect the refuge.  Mr. Leal never left the refuge

16    with the items, did he?

17    A    No.

18    Q    So the most we can say that he attempted to take the

19    items.

20    A    He mentioned he was going to take some of those items

21    with him as he was walking to his truck, yes.

22    Q    And let me ask a few questions about some of the items at

23    least.  The salt here, the Sal del Rey is a salt lick, isn't

24    it?

25    A    Correct.

1   Q    It's estimated to contain four million tons of salt.

2   Isn't that right?

3   A    Sure.

4   Q    You're not saying that the salt Mr. Leal took had any

5   sort of detrimental affect on sodium levels at the salt lick,

6   are you?

7   A    No, sir.

8   Q    He was also not coming out with a truck load of wood, was

9   he?

10  A    No.

11  Q    And you have no evidence that he killed any animals while

12  he was visiting the refuge.

13  A    No.

14          MR. GONZALEZ:  No further questions, Your Honor.

15          THE COURT:  All right.  Any follow-up, Government?

16          MS. WALKER:  No, Your Honor.

17          THE COURT:  All right.

18      (Witness excused.)

19          MS. WALKER:  The Government would rest, Your Honor.

20          THE COURT:  Do you have a witness?

21          MR. GONZALEZ:  No witnesses, Your Honor, no evidence

22  to present.

23          THE COURT:  All right.  Do you -- I guess it's just

24  left for argument at this point?

25          MR. GONZALEZ:  Yes, Your Honor.

1          MS. WALKER:  Yes, Your Honor.

2          THE COURT:  Go ahead, Government.

3          MS. WALKER:  Yes, Your Honor.

4          CLOSING ARGUMENT ON BEHALF OF THE GOVERNMENT

5          MS. WALKER:  In this case the Government is

6    confident that we have proven beyond a reasonable doubt that

7    the Defendant did commit the charged violation.  The law

8    states that, under subsection (c) of 668dd that no person

9    shall disturb, remove or possess any real or personal property

10   of the United States or take or possess any bird or part of

11   within such area.  And that is what we have here, Your Honor.

12         We heard testimony from Officer Garcia that on

13   October 18 of last year, 2020, he encountered the Defendant

14   and the Defendant had in his possession wood, wildlife bones,

15   31 feathers, rocks and crystals and salt that he stated that

16   he had taken from Sal del Rey with the intent to use for

17   decoration on his house.

18         It's a pretty simple and straightforward case, Your

19   Honor.  The Defendant admitted to it, we have photographs of

20   these items, they are Government's Exhibits 1 through 9.  The

21   defense anticipates, as we heard a little bit in their

22   opening, are going to rely on a legal argument and not contest

23   the fact that the Defendant did attempt to take these items.

24         However, it's the Government's position that this

25   legal argument should fail.  This is not the legal standard to

1    which this law is held to.  When we look --

2         THE COURT:  And I don't mean to interrupt you,

3    because I may have broke your train of thought, you may see

4    something very important, but would you please read the

5    statute you were reading into the Record, because the face

6    masks sometimes are muffling and I want to make sure it's

7    clear on the Record so when I go back and hear that I can --

8    when you read that I can look at the statute again.

9         MS. WALKER:  Yes, Your Honor.  It's 668 -- sorry,

10   it's 16 USC 668dd, subsection (c), which -- would you like me

11   to read the statute again?

12        THE COURT:  No, it's fine.  I just wanted to make

13   sure --

14        MS. WALKER:  Okay.  The cite.

15        Now part of the statute under C, which I anticipate

16   defense will argue, states that no person shall take these

17   items unless such activities are authorized either under

18   subsection (d) or by the express provision of a law,

19   proclamation, executive order, or other order.  It's the

20   Government's position that there is no unless in this

21   instance, Your Honor.

22        But when we look at subsection (d), subsection (d)

23   permits the use of an area for hunting, fishing, public

24   recreation and accommodations.  That is not what this as is

25   about, Your Honor.  This case is about the Defendant taking

1      items.  This does not fall into hunting, fishing, public

2      recreation and accommodation.  So it's our belief that

3      subsection (d) does not apply as a defense here.

4            Now when we look at the Conservation Plan defense is

5      attempting to argue that the Defendant can take these items

6      because they do not materially detract from or interfere with

7      the purposes for which the refuge is established.  But that is

8      simply not the standard in this case.  That standard is

9      applying to wildlife observation, photography, fishing and

10     hunting recreational opportunities.  And again, Your Honor,

11     that's not what this case is about.  This case is about the

12     Defendant taking items.  This does not fall into any one of

13     those categories.

14           And, Your Honor, it's the same thing with the

15     executive order that the defense referenced earlier.  When we

16     look at that executive order, again, it's recognize compatible

17     wildlife-dependent recreational activities involving hunting,

18     fishing, wildlife observation and photography, environmental

19     education and interpretation.  None of that allows for the

20     taking of items on the refuge.

21           In fact, Officer Garcia did clarify that there was

22     absolutely no element of the Conservation Plan or any other

23     rule or law that allows visitors to take items from th refuge.

24     Not one feather, certainly not 33 feathers, plus wood, salt,

25     and animal bones.  He did state that this is important to

1        enforce because it would lessen the integrity of the refuge,

2        both for the wildlife as well as the visitors.

3               And, Your Honor, the Government is asking that you

4        find this Defendant guilty of taking these items.  We do

5        believe that we have met our burden of beyond a reasonable

6        doubt in this case, and that any defense doesn't apply because

7        it's simply not one of the allowable areas here.  Thank you.

8               (Pause in the proceedings.)

9                     THE COURT:  That's it?

10                    MS. WALKER:  Yes, Your Honor.

11                    THE COURT:  All right.  Mr. Gonzalez?

12                    CLOSING ARGUMENT ON BEHALF OF THE DEFENDANT

13                    MR. GONZALEZ:  Your Honor, briefly, and I made

14       pretty much all the arguments during the opening about what --

15       this is sort of coming down to an analytical framework here

16       for Your Honor.  I think if the Court had a very clear set of

17       laws to follow, the issue would be very easy to determine, did

18       he violate or not.  The exhibits that we've introduced for the

19       Court to consider, the defense exhibits, sort of outline the

20       laws and the particular areas of interest for this Court when

21       it's determining whether Mr. Leal committed a violation of the

22       cited section here.

23              I wanted to address -- I guess I'm going to go down

24       the list of the items that Mr. Leal was alleged to have taken,

25       or attempted to take.  I'm going to be looking at Defense

1    Exhibit 4, Your Honor.  I haven't referenced it yet.  The

2    Court may have it, it's in the packet that I tendered.

3    Defense Exhibit 4, Your Honor, and I don't want to take too

4    long here, but I do want to make a point about what regulation

5    this Defense Exhibit 4 is presenting to the Court.

6         It says -- it's Section 3622.4 of this long CFR, as

7    the Court knows, and it provides for the free use of petrified

8    wood, Your Honor.  In general the authorized officer is in

9    control regarding the removal without charge of wood on public

10   lands.  It cannot exceed a certain number of pounds, in this

11   case 24.

12        There's no evidence the Government presented that

13   indicates that the number of pounds of wood that Mr. Leal had

14   exceeded 24.  There also is no evidence to indicate that the

15   wood Mr. Leal had in his hands were regular -- was regular

16   wood rather than petrified wood.  And so on that basis we're

17   asking the Court -- if the Court were to find a violation

18   here, I don't think the evidence supports a violation as to

19   wood that he had in his possession.

20        Your Honor, the officer may not have been terribly

21   specific about the items.  It was Mr. Leal's rocks, there's

22   been no real testimony that the rocks he had in his box were

23   from the wildlife refuge.  There's been an emphasis on the

24   salt, but not the rocks, Your Honor.  So if the Court were to

25   find, again, a violation, we contend the evidence does not

1    support it would be on the basis of rocks.

2         Your Honor, the salt -- we're talking about a de

3    minimis amount of salt, and if the Court were to side with our

4    position regarding the analytical framework to be applied, the

5    one that requires the Court to consider whether there was a

6    material disruption of the refuge, our contention is none of

7    the remaining items materially disturbed the wildlife refuge.

8    And on that basis, Your Honor, our position is that the

9    Government's evidence does not establish beyond a reasonable

10   doubt that he -- that a violation under this section occurred.

11   Thank you.

12            THE COURT:  Any rebuttal?

13            MS. WALKER:  Yes, Your Honor.

14       REBUTTAL ARGUMENT ON BEHALF OF THE GOVERNMENT

15            MS. WALKER:  It's again the Government's position

16   that that's simply not the standard.  It is not that it

17   materially disturbed the refuge.  In fact, the law is no

18   person shall disturb, remove or possess any real or personal

19   property of the United States or take or possess any bird part

20   within such area.  It does not require that it be a

21   substantial amount.  And the standard in which defense is

22   applying that we find in Defense Exhibit 2, again, is

23   referring to wildlife observation, photography, fishing and

24   hunting.  It does not apply to taking items from the refuge.

25            So again, we would just state that that's not the

1    accurate standard to be applying in this instance, and when we

2    look at the law as it is, the Defendant did violate it by

3    removing the items, so it's the United States' position that

4    the Defendant did commit a crime and he should be found guilty

5    in this case because we have produced evidence today for the

6    Court to conclude that beyond a reasonable doubt the Defendant

7    did take the items from the refuge.

8            THE COURT:  All right.  I'll take the testimony and

9    the arguments under advisement and I'll issue a ruling at a

10   later date.

11           Anything else for the Record, Ms. Walker?

12           MS. WALKER:  No, Your Honor.

13           THE COURT:  Mr. --

14           MR. GONZALEZ:  No, Your Honor.

15           THE COURT:  -- Gonzalez?

16           MR. GONZALEZ:  Thank you.

17           THE COURT:  All right.  Everybody can go.

18        (Bench Trial adjourned 4:33 p.m.)

19

20

21

22

23

24

25                           *  *  *  *  *

1          *I certify that the foregoing is a correct transcript*

2     *to the best of my ability produced from the electronic sound*

3     *recording of the proceedings in the above-entitled matter.*

4      */S./  MARY D. HENRY*

5     *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

6     *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

7     *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

8     *JTT TRANSCRIPT #64748*

9     *DATE FILED:  NOVEMBER 3, 2021*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25