IN THE UNITED STATES MAGISTRATE COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | ACTION NO. 7:21-PO-0001 |
| EDUARDO LEAL | * | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR JUDGMENT OF ACQUITTAL**

I. *McKelvey* **is Inapposite Because the** *McKelvey*-**type Proviso Comes** *After* **§ 668dd(c)'s Authorization Exception**

The Government analogizes to the statute in *McKelvey* to support that the authorization exception contained in § 668dd(c) should be construed as an affirmative defense, as the Supreme Court held in *McKelvey*. The statute in *McKelvey* provided:

"[t]hat no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct […] any person from peaceably entering upon […] any tract of public land […] or shall prevent or obstruct free passage or transit over or through the public lands. *Provided, this section shall not be held to affect the right or title of persons, who have gone upon, improved, or occupied said lands under the land laws of the United States, claiming title thereto, in good faith*." *McKelvey v. United States*, 260 U.S. 353, 356 (1922) (emphasis added).

Here, § 668dd(c) contains the same *McKelvey*-type proviso, but it comes *after* the authorization exception, as underlined below:

"No person shall . . . possess any real or personal property of the United States . . . or possess any . . . bird . . . or part or nest or egg thereof . . . unless such activities are permitted either under subsection (d) of this section or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof: *Provided, That the United States mining and mineral leasing laws shall continue to apply to any lands within the System to the same extent they apply prior to October 15, 1966, unless subsequently withdrawn under other authority of law*." 16 U.S.C. § 668dd(c) (emphasis added).

*McKelvey* is therefore inapposite because *McKelvey* relates to a different part of § 668dd(c), which is not at issue here.

1

Instead, *Vuitch* controls because the authorization exception falls in line with *Vuitch*'s exception language, which the *Vuitch* Court held to be an element, as underlined for comparison below:

***Vuitch* statute**: "Whoever ... procures or produces ... an abortion or miscarriage on any woman, <u>unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine</u>, shall be imprisoned in the penitentiary not less than one year or not more than ten years." *United States v. Vuitch*, 402 U.S. 62, 68 (1971) (emphasis added).

**Section 668dd(c)**: "No person shall . . . possess any real or personal property of the United States . . . or possess any . . . bird . . . or part or nest or egg thereof . . . <u>unless such activities are permitted either under subsection (d) of this section or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof</u>." 16 U.S.C. § 668dd(c) (emphasis added).

Because, as in *Vuitch*, § 668dd(c)'s authorization exception "is incorporated in the enacting clause of [the] statute, the burden is on the prosecution to plead and prove that the defendant is not within the exception." *Vuitch*, 402 U.S. at 70.[1]

## II.  No Exercise in Syntax Can Shift the Burden Away from the Prosecution

The Government performs an exercise in syntax in hopes of severing the authorization exception from the enacting clause. Specifically, the Government argues that the authorization exception is not element because one could strike the authorization language from § 668dd(c), and yet the remaining language would still clearly describe the stand-alone crime of possessing prohibited items. <u>See Government's Response, Page 10</u>. However, as the Ninth Circuit in *Carey* acknowledged, this syntactical exercise only gets the Government so far because, after all, one could also strike the exception language from the *Vuitch* statute, and the remaining language would still clearly describe the stand-alone crime of prohibiting an abortion; yet this syntactical exercise did not stop the U.S. Supreme

---

[1] Relatedly, in *Adams*, the Fifth Circuit rejected the Government's attempt to characterize an element as an affirmative defense in a case dealing with the interpretation of a regulation promulgated under the Migratory Bird Act. *See United States v. Adams*, 174 F.3d 571, 578 (5th Cir. 1999) ("The language is flatly inconsistent with the contention that the exceptions are affirmative defenses rather than elements of the crime itself. The regulation indicates by its own language that its prohibition does not extend to the two circumstances set forth in the exceptions. The onus is therefore on the Government to prove that neither circumstance existed in the present case").

Court in *Vuitch* from holding the prosecution to its burden. *United States v. Carey*, 929 F.3d 1092, 1101 (9th Cir. 2019).

Instead of stopping at syntax, the Ninth Circuit in *Carey* went far beyond mere semantics and instead undertook an extensive analysis that incorporated considerations of legislative history, *see id*. at 1102–03, as did the *Vuitch* and *Kloess* courts.

### III.     *Carey* is Distinguishable, and the Legislative History Here Supports Element-Status

The regulation's legislative history in *Carey* indicated that permits for BASE jumping were intended to be issued "only in very limited and exceptional circumstances." *Id.* According to the *Carey* Court, the exceptional rarity of permits for such activity supported that the burden should fall to the defendant to show he had a permit to engage in BASE jumping—rather than on the prosecution to show no permit existed in the particular defendant's name to engage in such activity. *Id*.

In contrast to the regulation in *Carey*, the legislative history here supports that the authorization exception is an integral element and ingredient of the offense itself. Notably, Congress passed § 668dd(c) to describe a crime that could possibly occur on all National Wildlife Refuge Systems across the United States, of which there are now 567 to date in counting. See https://www.doi.gov/blog/celebrating-national-wildlife-refuges. It is therefore no wonder that Congress made sure to include the authorization language in the enacting clause because, by statute, permissible recreational uses at a given refuge would be spelled out under each refuge's comprehensive conservation plan, among other sources. The express statutory provision allowing for "compatible wildlife-dependent recreational uses" indicates that Congress considered the promotion of recreational activity a top priority. 16 U.S.C. § 668dd(e)(2)(F). Additionally, it just does not make sense to put the burden on the visitor to prove the activity is permitted because the Government will always be better positioned than the visitor to know the legal sources governing permissible uses on its own land. *See United States v. Kloess*, 251 F.3d 941, 946 (11th Cir. 2001) (ease of proof factor).

### IV.     The Enforcement Action Offends Due Process

In an effort to prove Mr. Leal's activity at the Refuge was not permitted, the Government elicited testimony from Officer Garcia to the effect that visitors could go to jail under § 668dd(c) for possessing even a single grain of salt or branch twig, regardless of any *mens rea*, and that nothing in the Comprehensive Conservation Plan ("the Plan") provided otherwise. See Reporter's Record. pgs. 26–27.

Such draconian enforcement action offends Due Process. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–403 (1966). "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary

people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).[2]

The arbitrariness of this draconian enforcement action becomes all the more problematic considering that Officer Garcia relied on—and the Government introduced into evidence—a now-expired Conservation Plan from 1997 to justify the enforcement action. Under § 668dd(e)(1)(A)(iv), the Conservation Plan is required to be renewed every 15 years. 16 U.S.C. § 668dd(e)(1)(A)(iv). The Plan was published in 1997, and there is no indication in the record that it had ever been renewed since 1997—much less within 15 years of this prosecution; yet the Plan itself was touted as the legal source supporting Officer Garcia's enforcement authority in that the Plan itself did not specifically authorize the possession of a grain of salt or twig branch on the Refuge, much less loose feathers. See Reporter's Record. pgs. 26–27

Rather than confront this serious affront to Due Process, this Court may resolve this case on the legal insufficiency ground raised herein. *See United States v. Adams*, 174 F.3d 571, 575–580 (5th Cir. 1999) (expressly avoiding a void-for-vagueness challenge to a regulation prosecuted under the Migratory Bird Act and instead reversing the Magistrate Judge's guilty verdict and rendering Judgments of Acquittal and stating: "Like the flush of a convey of quail, a number of reversible issues materialize in this appeal").

## V.   The Evidence Does Not Establish the Lack-of-Authorization Element *Beyond a Reasonable Doubt*

Proof "beyond a reasonable doubt" is "proof of such a convincing character that [the factfinder] would be willing to rely and act upon it without hesitation" in finding the defendant guilty. *See* FIFTH CIR. PATTERN (CRIM.) JURY INSTRUCTIONS § 1.05 (2019).

Here, to the extent the Court would be able to consider the outdated Conservation Plan in assessing whether the activity was permitted, Officer Garcia's testimony ignored authorization expressly provided under the Plan itself. Specifically, the Plan allows for the provision of "compatible wildlife-dependent public access and recreational opportunities . . . that result in furthering the public's appreciation of [the Refuge]" through the provision of "wildlife observation, photography, fishing, and hunting recreational opportunities in accordance with Executive Order 12996." *See* Section 5.5 of the Plan. The Plan further provides that "[r]ecreational uses are considered Compatible when they do not '*materially detract* from or interfere with the purposes for which a refuge is established.'" *Id*. (emphasis added).

---

[2] *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (holding the penal statute was unconstitutionally vague by failing to clarify what was contemplated by the requirement that a suspect provide a "credible and reliable" identification); *see City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) ("This is not an ordinance that simply regulates business behavior and contains a scienter requirement. It is a criminal law that contains no *mens rea* requirement, and infringes on constitutionally protected rights. When vagueness permeates the text of such a law, it is subject to facial attack") (internal citations and quotations omitted).

Neither § 668dd(d) or (e), the Plan, nor Executive Order 12,996 define the term "hunt." Webster's Dictionary defines the term "hunt" to include, among other things, "to search out: SEEK" and "to attempt to find something." *See* https://www.merriam-webster.com/dictionary/hunt; *see also Smith v. United States*, 508 U.S. 223, 228 (1993) (relying on Webster's Dictionary to discern the ordinary and natural meaning of an undefined statutory term).

Tellingly, the Government fails to address whether Mr. Leal's conduct constituted hunting activity or any other permitted activity or whether such activity materially detracted from the purposes of the Refuge.

The defense urges that the evidence presented at trial left too many reasons to doubt that the prosecution proved the lack-of-authorization element. The evidence is not of such a convincing character that one would be willing to rely and act upon the proof without hesitation in finding Mr. Leal guilty under § 668dd(c). *See* FIFTH CIR. PATTERN (CRIM.) JURY INSTRUCTIONS § 1.05 (2019).

    Respectfully Submitted,

    MARJORIE A. MEYERS
    Federal Public Defender Southern District of
    Texas Texas State Bar No. 14003750
    Southern District of Texas No.  3233


    By: /s/ Chris Gonzalez
    CHRIS GONZALEZ
    Assistant Federal Public Defender
    Attorney-in-Charge
    Texas State Bar Number 24078576
    Southern District of Texas No. 3256152
    1701 W. Business Hwy. 83, Suite 405
    McAllen, Texas  78501-5159
    Telephone: (956) 630-2995
    Fax: (956) 631-8647

CERTIFICATE OF SERVICE

On November 23, 2021, I electronically served a copy of the foregoing reply on Assistant United States Attorney Devin Walker.

>/s/ Chris Gonzalez
> CHRIS GONZALEZ
> Assistant Federal Public Defender