United States District Court
Southern District of Texas
FILED

MAR 17 2022

Nathan Ochsner, Clerk

United States District Court
Southern District of Texas

**ENTERED**
March 17, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **ACTION NO. 7:21-PO-0001** |
| | § | |
| **EDUARDO LEAL** | § | |

## MEMORANDUM AND ORDER

The undersigned Magistrate Judge recently issued a Memorandum and Order finding and adjudging Defendant EDUARDO LEAL guilty, after a bench trial, of having engaged in prohibited activities in a National Wildlife Refuge System in violation of 16 U.S.C. § 668dd(c). (Dkt. No. 14). Pending now is Defendant's Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(c) (the "Motion"). (Dkt. No. 16). Defendant's main argument is that the Magistrate Judge erred by construing an exception to the § 668dd(c) offense as an affirmative defense rather than as an element of the offense on which the Government had the burden. (*See id.* at 1-3). The Government has since filed a response to the Motion (Dkt. No. 22), and Defendant has replied (Dkt. No. 23), so the matter is now ripe for adjudication.

For the following reasons, the Motion (Dkt. No. 16) will be DENIED.

## I. BACKGROUND

On October 18, 2020, Defendant was cited under § 668dd(c) for removing or destroying, property from *La Sal del Rey* (or "the King's Salt") wildlife refuge in Hidalgo County, Texas (Dkt. No. 1 at 3), a charge that would later be amended to also include the possessing or taking of property (Dkt. No. 19 at 4-5).

On September 10, 2021, a bench trial was held before the Magistrate Judge. At trial, Defendant argued in general terms that because § 668dd(c) contains an exception for otherwise prohibited activities if they are permitted by applicable law, the Government bears the burden of

establishing that no such overriding law exists. (Dkt. No. 19 at 8). Defendant also proffered

regulations and guidelines which ostensibly authorized his conduct. (*Id.* at 9-11).

On October 4, 2021, the Magistrate Judge issued the order adjudicating Defendant's guilt.

(Dkt. No. 14). Through that order, the Magistrate Judge cited the Eleventh Circuit's opinion in

*United States v. Kloess*, 251 F.3d 941 (11th Cir. 2001), among other authority, for the proposition

that "statutory exceptions are generally construed as affirmative defenses that a defendant has the

burden of proving." (*Id.* at 10). Defendant offered nothing by way of authority to modify this

general rule, and the Magistrate Judge otherwise noted that "it would be practically impossible for

the Government to prove the negative that no authority allowed the offense conduct." (*Id.* at 13 &

n.10). The Magistrate Judge also determined that Defendant's proffered sources did not authorize

the conduct for which he was cited. (*Id.* at 13-14).

On October 18, 2021, Defendant filed the Motion, together with a Notice of Appeal. (Dkt.

Nos. 15 & 16). The Magistrate Judge then issued an order commenting on certain procedural

concerns but nonetheless requiring the filing of a response by the Government.[1] (Dkt. No. 17).

The Government responded as ordered (Dkt. No. 22), arguing that the statutory exception at issue

presents an affirmative defense for the defendant to prove.[2] Defendant submitted a reply,[3] which

was filed under seal.[4] (Dkt. No. 23).

---

[1] These procedural concerns related to the propriety of a Rule 29(c) motion following a bench trial and the propriety of a notice of appeal to the U.S. Court of Appeals for the Fifth Circuit. (Dkt. No. 17 at 1 n.1). The Notice of Appeal appears on the docket to give notice of an appeal to the Fifth Circuit, but the document itself purports to give notice of an appeal to the District Court. (*See* Dkt. No. 15 at 1).

[2] Through its response, the Government does not appear to take issue with the propriety of Defendant's attempt to proceed with his request for acquittal under Rule 29(c).

[3] Defendant does not attempt to clarify the nature of the Notice of Appeal whether through the reply or another stand-alone filing.

[4] The propriety of filing the reply under seal is addressed below.

## II. ARGUMENTS

Through the Motion, Defendant raises three arguments. As alluded to, Defendant argues that the statutory exception to § 668dd(c) is not an affirmative defense but, rather, an element of the offense. (Dkt. No. 16 at 1-3; Dkt. No. 23 at 1-3). Related to that is Defendant's argument that the Government failed to submit proof of the exception's inapplicability at trial. (Dkt. No. 16 at 3-4; Dkt. No. 23 at 4-5). Defendant also argues that his conviction offends due process insofar as § 668dd(c) does not adequately define the proscribed conduct. (Dkt. No. 23 at 3-4).

## III. LEGAL STANDARD

The language of § 668dd(c) makes room for potential exception. Subsection (c) prohibits certain activities, such as removing, destroying, or possessing any property of the United States in a wildlife refuge, "unless such activities are permitted either under subsection (d) of [§ 668dd] or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof . . . ." 16 U.S.C. § 668dd(c). The exception reads, in larger statutory context, as follows:

> No person shall disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States, including natural growth, in any area of the System; or take or possess any fish, bird, mammal, or other wild vertebrate or invertebrate animals or part or nest or egg thereof within any such area; or enter, use, or otherwise occupy any such area for any purpose; unless such activities are performed by persons authorized to manage such area, or *unless such activities are permitted either under subsection (d) of this section or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof.* Provided, That the United States mining and mineral leasing laws shall continue to apply to any lands within the System to the same extent they apply prior to October 15, 1966, unless subsequently withdrawn under other authority of law.

*Id.* (emphasis modified).

In general, the government is not required to "negative the matter of an exception made by proviso or other distinct clause, whether in the same section or elsewhere[.]" *McKelvey v. United*

*States*, 260 U.S. 353, 357 (1922). Instead, "it is incumbent on one who relies on such an exception to set it up and establish it." *Id.* "[W]hen an exception is incorporated in the enacting clause of a statute," however, "the burden is on the prosecution to plead and prove that the defendant is not within the exception." *United States v. Vuitch*, 402 U.S. 62, 70 (1971).

Stated differently, where an offense "may be accurately and clearly defined without reference to the exception," the exception is an affirmative defense that a defendant must prove; but where an exception is an "ingredient[ ] of the offense [such that it] cannot be accurately and clearly described if the exception is omitted," then the exception is an element, and the government must prove its inapplicability. *United States v. English*, 139 F.2d 885, 886 (5th Cir. 1944).

In making this determination, the Fifth Circuit focuses on the statute's text as well as canons of statutory construction. *See United States v. Haggerty*, 997 F.3d 292, 299-300 (5th Cir. 2021); *see also United States v. Santos-Riviera*, 183 F.3d 367, 369-72 (5th Cir. 1999). Again, "[w]here one can omit the exception from the statute without doing violence to the definition of the offense, the exception is more likely an affirmative defense." *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997). Moreover, courts will not construe a statute in a fashion that will lead to absurd results. *United States v. Olis*, 450 F.3d 583, 586 (5th Cir. 2006).

## IV. ANALYSIS

Each of Defendant's arguments will be addressed in turn.

### A. Section 668dd(c)'s Exception: Element or Affirmative Defense?

Analysis of § 668dd(c)'s exception will proceed as follows. First, the Magistrate Judge will consider the statute's structure and text. Second, the Magistrate Judge will compare § 668dd(c) to the statutes at issue in several cases briefed by the parties. Third, the Magistrate Judge

will address extratextual considerations, specifically, issues of statutory construction.  Fourth, the

Magistrate Judge will address certain considerations Defendant points to from the *Kloess* case.

1.  Structure and Text

Again, the exception to § 668dd(c) provides, in context, that—

> [n]o person shall disturb, injure, cut, burn, remove, destroy, or possess any real or
> personal property of the United States, including natural growth, in any area of the
> System; or take or possess any fish, bird, mammal, or other wild vertebrate or
> invertebrate animals or part or nest or egg thereof within any such area; or enter,
> use, or otherwise occupy any such area for any purpose; unless such activities are
> performed by persons authorized to manage such area, or *unless such activities are
> permitted either under subsection (d) of this section or by express provision of the
> law, proclamation, Executive order, or public land order establishing the area, or
> amendment thereof.* Provided, That the United States mining and mineral leasing
> laws shall continue to apply to any lands within the System to the same extent they
> apply prior to October 15, 1966, unless subsequently withdrawn under other
> authority of law.

16 U.S.C. § 668dd(c) (emphasis modified).

In terms of structure, § 668dd(c) prohibits a wide variety of activity before carving out the

exception.  While this syntactical structure is not dispositive, it is nonetheless "somewhat

revealing" and favors construing the exception as an affirmative defense.  *See United States v.

Carey*, 929 F.3d 1092, 1099-1100 (9th Cir. 2019) (construing exception as affirmative defense

where statute "first describes the prohibited behavior" and "offers the exception subsequently").

Additionally, although the exception is within the same section of the statute, it is set apart from

the statute's prohibition by a semicolon in a separate clause.  *See McKelvey*, 260 U.S. at 357 ("[A]n

indictment or other pleading . . . need not negative the matter of an exception made by a proviso

*or other distinct clause, whether in the same section or elsewhere . . . .*" (emphasis added)).

Textually, the exception begins with the phrase "unless such activities are permitted [by

other subsection or authority]," and courts have construed similar language as creating an

affirmative defense. *See United States v. Quinn*, 403 F. Supp. 2d 57, 63 n.4 (D.D.C. 2005) ("A

reasonable interpretation of the 'except as otherwise authorized' clause of [the regulation] is that it creates an *affirmative defense* to a charge of willful violation of the regulation rather than defining a necessary *element* of such an offense." (emphasis original)). Indeed, § 668dd(c) can be read as describing an offense without reference to its exception. An individual who, for example, disturbs federal property on a wildlife refuge, subject to any applicable mens rea requirement, can be said to have violated § 668dd(c). In other words, § 668dd(c), without reference to its exception, "defines a perfectly cogent offense." [5]   *See McArthur*, 108 F.3d at 1354.

Accordingly, § 668dd(c)'s structure and text support construing its exception as an affirmative defense.

### 2. Caselaw Comparison

In support of their respective positions, the parties cite to varying caselaw. Defendant relies on *United States v. Vuitch*, 402 U.S. 62 (1971) (Dkt. No. 16 at 1) and *United States v. Adams*, 174 F.3d 571 (5th Cir. 1999) (Dkt. No. 23 at 2 n.1), while the Government relies on *McKelvey v. United States*, 260 U.S. 353 (1922) (Dkt. No. 22 at 4-8). Also relevant are *United States v. Santos-Riviera*, 183 F.3d 367 (5th Cir. 1999), another statutory exception case decided by the Fifth Circuit, and *United States v. Haggerty*, 997 F.3d 292 (5th Cir. 2021), the Fifth Circuit's most recent such case. Each of these cases is discussed in chronological order.

In *McKelvey*, the Supreme Court examined a statute providing, in pertinent part, that—

> no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: *Provided, this*

---

[5] Of course, one could argue that this description is inaccurate insofar as it omits an "essential ingredient" of the statute, i.e., its exception. But as the Fifth Circuit recently noted, "[s]uch reasoning is circular" insofar as it "begs the question of what 'ingredients' constitute the offense." *See Haggerty*, 997 F.3d at 300 (quoting *United States v. Prentiss*, 256 F.3d 971, 988 (10th Cir. 2001) (Baldock, J., dissenting)).

> *section shall not be held to affect the right or title of persons, who have gone upon,*
> *improved or occupied said lands under the land laws of the United States, claiming*
> *title thereto, in good faith.*

*McKelvey*, 260 U.S. at 356 (emphasis added).   In construing the statute, the *McKelvey* court

rejected the defendants' argument that the government had the burden of proving that they "were

not within the [emphasized] exception." *Id.* at 356-57.  Instead, the court held that—

> an indictment or other pleading founded on a general provision defining the
> elements of an offense . . . need not negative the matter of an exception made by a
> proviso or other distinct clause, whether in the same section or elsewhere, and that
> it is incumbent on one who relies on such an exception to set it up and establish it.

*Id.* at 357.

Subsequently, in *Vuitch*, the Supreme Court interpreted a statute that criminalized abortion

subject to exception. *Vuitch*, 402 U.S. at 67-68.  This statute read, in pertinent part, that—

> [w]hoever, by means of any instrument, medicine, drug or other means whatever,
> procures or produces, or attempts to procure or produce an abortion or miscarriage
> on any woman, *unless the same were done as necessary for the preservation of the*
> *mother's life or health and under the direction of a competent licensed practitioner*
> *of medicine,* shall be imprisoned in the penitentiary not less than one year or not
> more than ten years . . . .

*Id.* (emphasis added).  The statute was construed, not to outlaw all abortions, but only those not

performed by a physician as necessary to preserve the mother's health.  *Id.* at 70.  "[W]hen an

exception is incorporated in the enacting clause of a statute," the *Vuitch* court held, "the burden is

on the prosecution to plead and prove that the defendant is not within the exception." *Id.*

In support of this construction, the *Vuitch* court noted that interpreting the statute to

presume guilt where "the mere fact of abortion was established" (i.e., by construing the exception

as an affirmative defense) would present constitutional issues under Fifth Amendment

jurisprudence. *Id.*  Requiring a physician to prove the medical necessity of an abortion, the *Vuitch*

court continued, "would be peculiarly inconsistent with society's notions of the responsibilities of

the medical profession," which presumes that physicians provide treatment "as is necessary to preserve their [patients'] health." *Id.* at 70-71.

In *Adams*, the Fifth Circuit considered exceptions to a regulation over the baiting of migratory birds. *Adams*, 174 F.3d at 574, 578. The regulation, 50 C.F.R. § 20.21(i), provided in pertinent part as follows:

> No person shall take migratory game birds:
>
> * * *
>
> (i) By the aid of bating, or on or over any baited area . . . . *However, nothing in this paragraph shall prohibit*:
>
> > (1) The taking of all migratory game birds, including waterfowl, on or over standing crops (including aquatics), flooded harvested croplands, grain crops properly shocked on the field where grown, or grains found scattered solely as the result of normal agricultural planting or harvesting; and
> >
> > (2) The taking of all migratory game birds, except waterfowl, on or over any lands where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed has been distributed or scattered as the result of bona fide agricultural operations or procedures.

50 C.F.R. § 20.21(i) (1999) (emphasis added). The *Adams* court held that because "[t]he regulation indicate[d] by its own language that its prohibition [did] not extend to the two circumstances set forth in the exceptions[,] . . . the onus [was] therefore on the [g]overnment to prove that neither circumstance existed in the . . . case." *Adams*, 174 F.3d at 578.

The *Santos-Riviera* case involved the construction of the Hostage Taking Act, 18 U.S.C. § 1203, which provides in pertinent part as follows:

> (a) *Except as provided in subsection (b) of this section*, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

(b) (1) *It is not an offense under this section* if the conduct required for the offense occurred outside the United States unless—

> (A) the offender or the person seized or detained is a national of the United States;

> (B) the offender is found in the United States; or

> (C) the governmental organization sought to be compelled is the Government of the United States.

(2) *It is not an offense under this section* if the conduct required for the offense occurred inside the United States, each alleged offender and each person seized or detained are nationals of the United States, and each alleged offender is found in the United States, unless the governmental organization sought to be compelled is the Government of the United States.

*Id.* (emphasis added). The *Santos-Riviera* court began its analysis by citing to *McKelvey*'s general rule that the government "need not negative the matter of an exception made by a proviso or other distinct clause[.]" *See Santos-Riviera*, 183 F.3d at 370-71 (citing *McKelvey*, 260 U.S. at 357). Noting that the statute prohibited conduct in subsection (a) but contained exceptions in subsection (b), the court then cited to other cases within and without the Fifth Circuit construing exceptions as affirmative defenses in similarly structured statutes. *Id.* at 371. Finally, the court in *Santos-Riviera* distinguished § 1203 from the regulation at issue in *Adams* on the basis that—

> an examination of the structure of § 20.21 reveals that, unlike the Hostage Taking Act, the prohibited conduct is set forth in continuous fashion in subsections (a) through (j). The delineation of the prohibited conduct is not complete until the end of subjection (j). Moreover, the exceptions at issue in *Adams* are incorporated within subjection (i) and are not contained in separate, distinct clauses or provisos.

*Id.* at 372 (internal citations omitted).

Most recently, in *Haggerty*, the Fifth Circuit examined a federal statute to determine whether a defendant's "Indian status" is an element of the offense or an affirmative defense. *Haggerty*, 997 F.3d at 298-302. The statute provided as follows:

> Except as otherwise expressly provided by the law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section *shall not extend* to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offense is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152 (emphasis added).   Like in *Santos-Riviera*, the Fifth Circuit first cited to *McKelvey*'s general rule regarding the treatment of a statutory exception. *Haggerty*, 997 F. 3d at 300 (citing *McKelvey*, 260 U.S. at 357).   The *Haggerty* court concluded that the defendant's offense, which involved the destruction of property "in Indian country," could be accurately and clearly described without reference to the Indian status exception as "[w]hoever maliciously destroys property in Indian country is guilty of an offense." *Id*. Any argument to the contrary, the Fifth Circuit noted, would "only work[ ] if its conclusion [were] also its premise: that because the intra-Indian exception is an essential element of the offense, the offense cannot be described if the exception is omitted." *Id*.

When viewed against these cases, § 668dd(c)'s exception resembles an affirmative defense along the lines of *McKelvey*, *Santos-Riviera*, and *Haggerty*.   As discussed, § 668dd(c) first describes a broad category of prohibited activity before stating the exception and is thus in syntax more like the statutes at issue in these cases than in *Vuitch* and *Adams*.  Indeed, § 668dd(c) can be distinguished from the statute in *Adams* on the same grounds identified in *Santos-Riviera*. Whereas the regulation in *Adams* scatters exceptions throughout its many subsections, § 668dd(c) completely delineates its prohibited conduct before stating the exception at issue, among others. Moreover, like in *McKelvey*, *Santos-Riviera*, and *Haggerty*, § 668dd(c) can also be plausibly read as describing an offense without reference to its exception.

Section 668dd(c)'s exception is also of a different character from the exceptions in *Vuitch* and *Adams*. Again, exceptions based on general references to other laws, such as the exception at issue here, are typically construed as affirmative defenses. *See Quinn*, 403 F. Supp. 2d at 63 n.4. The exceptions in *Vuitch* and *Adams*, on the other hand, concern specific, articulable factual scenarios. In *Adams*, for example, § 20.21(i) generally forbade the taking of game birds over baited land but permitted such takings if the land was baited due to normal agricultural activity.

Construing § 668dd(c)'s exception as an affirmative defense is also unlikely to present the same concerns the *Vuitch* court found troubling. The *Vuitch* court determined that requiring a physician to prove the "medical necessity" of an abortion would present constitutional issues as to the presumption of innocence and society's assumption that physicians only provide services that are medically necessary. Here, on the other hand, there is no comparable societal assumption that taking property from a refuge, for example, is somehow authorized by law.

Accordingly, caselaw comparisons support construing § 668dd(c)'s exception as an affirmative defense.

3. Extratextual Considerations

Important considerations apart from § 668dd(c)'s text, structure, and comparison to other statutes support construing its exception as an affirmative defense.

Courts are counseled not to interpret a statute in a manner that will lead to absurd results. *Olis*, 450 F.3d at 586. Construing § 668dd(c)'s exception as an element would require the government in each case to prove that no separate authority permitted otherwise violative activity, which counsels against construing an exception as an element. *See United States v. McKie*, 112 F.3d 626, 631 (3d Cir. 1997). Indeed, this would require the government to prove a negative—an

"inherently difficult" if not practically impossible task.[6] *United States v. Wilgus*, 638 F.3d 1274, 1288-89 (10th Cir. 2011) (citing *Elkins v. United States*, 364 U.S. 206, 218 (1960)). Moreover, imposing such an obligation here would extend, not only to a limited class of potential defendants, but to every defendant prosecuted under § 668dd(c), further signaling an affirmative defense. *See United States v. Laroque*, 2015 WL 306977, at *2-3 (E.D.N.C. Jan. 21, 2015).

Accordingly, these considerations support construing § 668dd(c)'s exception as an affirmative defense.

### 4.   The *Kloess* Considerations

Defendant points to two additional considerations to support his argument based on the *Kloess* case, where the Eleventh Circuit set out a three-part test to determine whether a statutory exception is an element of an offense. Apart from the text and structure of the statute, the Eleventh Circuit makes its determination based on legislative history and whether "the government is well-situated to adduce evidence tending to prove the applicability of the exception." *Kloess*, 251 F.3d at 944. All three factors must be met in establishing an exception as an element. *Id.*

According to Defendant, congressional intent regarding § 668dd(c) supports that the exception is an element. (Dkt. No. 16 at 2). Acknowledging that the exception is "exceedingly broad," Defendant argues that its "broad description is understandable considering that Congress passed § 668dd(c) to describe a crime that could possibly occur on all National Wildlife Refuge Systems across the United States, of which there are now 567 to date in [sic] counting." (*Id.*).

---

[6] Although Congress sometimes requires the government to prove a negative—such as that a defendant charged under 8 U.S.C. § 1326 with illegal reentry into the United States did not apply for consent for admission—those circumstances are distinguishable. Section 1326's lack-of-consent requirement involves a factual showing based on immigration records maintained by and more readily accessible to the government. In contrast, and as noted further below, § 668dd(c)'s exception involves a legal assay which the government and a defense attorney are similarly-equipped to conduct.

Separately, Defendant argues that "the government is better positioned . . . to know the legal sources governing permissible uses on its own land." (*Id.* at 2-3).

As a threshold matter, the Fifth Circuit has not adopted the *Kloess* test. Looking to cases like *Adams* and *Haggerty*, the Fifth Circuit appears to rely primarily—if not exclusively—on the statutory text and canons of construction. As already noted, the Magistrate Judge previously cited to *Kloess* only for the broad proposition that statutory exceptions are generally construed as affirmative defenses. Even under the *Kloess* test, however, Defendant fails to show that the statutory text, let alone the other factors, establish the § 668dd(c) exception as an offense element.

Defendant does not cite any materials divining congressional intent regarding § 668dd(c). In fact, the only source Defendant cites in discussing congressional intent is a 2019 blog post on the U.S. Department of the Interior's website—and only to substantiate the then-current number of national wildlife refuges. (*See* Dkt. No. 16 at 2; *see also* Dkt. No. 23 at 3). The Magistrate Judge was unable to locate any legislative history on point. Moreover, although the Government is no-doubt sophisticated, it is not clearly better equipped than Defendant, who is represented by counsel, to comb through potentially applicable legal authority for exceptions.

## B. Insufficient Evidence

Defendant next argues that the Government proffered insufficient evidence at trial that no authority, under the exception to § 668dd(c), allowed Defendant's offense conduct. As noted above, this argument is based on Defendant's contention that the exception is an element of the offense. Because the exception is an affirmative defense, however, the burden of proving its applicability fell on Defendant. *See United States v. Ramcharan*, 83 F. App'x 667, 670 (5th Cir. 2003) (per curiam). Moreover, the legal sources and guidelines Defendant proffered at trial did

not authorize his taking and possessing of property on the refuge. (*See* Dkt. No. 14 at 13-14).

Accordingly, Defendant's insufficient evidence argument fails.

## C. Due Process

Defendant also argues that his conviction offends due process. (Dkt. No. 23 at 3-4).

According to Defendant, § 668dd(c) is void-for-vagueness because it does not define the criminal

offense with sufficient definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement. (*Id.* (quoting

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983)) (quotations omitted)). Specifically, Defendant

points to trial testimony offered by Romeo Garcia, a Senior Federal Wildlife Officer with the U.S.

Fish and Wildlife Service, that § 668dd(c) is violated where someone takes a de minimis amount

of property.[7] (Dkt. No. 23 at 3-4 (citing Dkt. No. 19 at 26-27)).

As a threshold matter, it seems Defendant raised this argument for the first time in his

sealed reply, which implicates several procedural concerns. Defendant filed the reply under seal

without apparent justification, as the document does not contain any personal data, information

regarding cooperation with an investigation, or the like. See U.S. DISTRICT COURT, SOUTHERN

DISTRICT OF TEXAS GENERAL ORDER NO. 2004-11. In so doing, Defendant effectively prevented

the Government from taking notice of and addressing his due process argument. Indeed, because

Defendant raised his due process argument only through the reply, the Magistrate Judge is under

no obligation to address it. *See United States v. Leach*, 213 F.3d 639, 639 (5th Cir. 2000) (per

curiam) ("Arguments raised for the first time in a reply brief are waived."); *see also Sifuentes v.*

*Brema Invest., LLC*, 2018 WL 3421386, at *3 (S.D. Tex. June 27, 2018) (collecting cases).

---

[7] Whether a de minimis taking violates the statute is a legal question for a court to make as opposed to a federal law enforcement officer.

Holding aside these procedural defects, Defendant fails to show that § 668dd(c) is unconstitutionally vague. The main thrust of his argument is that the criminalization of the possession, destruction, or taking of a de minimis amount of property from a refuge is not apparent from the statute's text. However, § 668dd(c) broadly prohibits the disturbance, injury, cutting, burning, removal, destruction, or possession of *"any* real or personal property of the United States, *including natural growth"* as well as the taking or possessing of *"any* fish, bird, mammal, or other wild vertebrate or invertebrate animals *or part or nest or egg thereof"* on a wildlife refuge. 16 U.S.C. § 668dd(c) (emphasis added). As the Supreme Court has noted, "the more important aspect of vagueness doctrine is not on actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 357-58 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)) (internal quotations omitted). Here, in referring to any natural growth or animal parts, the statute clearly prohibits the possession, taking, or removal of seemingly de minimis material. Regardless, there is nothing inherently unconstitutional about criminalizing de minimis conduct or conduct of de minimis effect.[8] *See United States v. Foote*, 2003 WL 22466158, at *1-2 (D. Kan. July 31, 2003) (rejecting argument on motion for acquittal "that Congress did not intent to criminalize de minimis trafficking in a single counterfeit good" under 18 U.S.C. § 2320); *see also United States v. Tezak*, 2000 WL 655955, at *13 (N.D. Ill. May 19, 2000) (recognizing that "Congress can criminalize any conduct that has an actual or potential 'de minimis' effect on commerce as long as the crime requires such an effect as an element").

Accordingly, Defendant cannot credibly argue that the statute is void for vagueness.

---

[8] Defendant's conduct can hardly be characterized as de minimis, as he was found in possession of several pieces of wood, 31 bird feathers, a bird wing, wildlife bones, and salt from the lake. (*See* Dkt. Nos. 12-4, 12-5, 12-6, 12-7 & 12-9; Dkt. No. 19 at 19-23).

## V. CONCLUSION

For the foregoing reasons, the Motion (Dkt. No. 16) is hereby DENIED. A sentencing hearing is hereby SCHEDULED in person before the undersigned for 2:00 p.m., April 5, 2022.

### *Directive to Clerk of Court*

The Clerk of Court is DIRECTED to forward a copy of this order to the parties by any receipted means.

The Clerk of Court is further DIRECTED to unseal Defendant's reply (Dkt. No. 23) for the reasons discussed above.

IT IS SO ORDERED.

DONE at McAllen, Texas this 17th day of March 2022.

J. SCOTT HACKER
United States Magistrate Judge